ALBERT B. MANN *vs.* THE GLASTONBURY KNITTING COMPANY (THE GLASTONBURY KNITTING COMPANY'S .APPEAL FROM COMPENSATION COMMISSIONER).

First Judicial District, Hartford, October Term, 1915.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

An injury to an employee does not arise "out of and in the course of his employment," as required by § 1 of Part B of the Workmen's Compensation Act (Public Acts of 1913, Chap. 138), unless it was received by him while he was acting within the scope of his employment, and unless there was a causal connection between the conditions surrounding the performance of his work and the resulting injury.

An employee acts within the scope of his employment not only while he is doing the precise work he was hired to do and anything incidental thereto, but also while he is doing something which, although quite apart from his obligatory duty, is nevertheless permitted by his employer for their mutual convenience.

On the other hand, although the injury arise from a risk of the business, yet if it is received while the employee has turned aside from his employment for his own purposes without the knowledge or assent of his employer, it does not arise "out of" the employment and does not entitle the claimant to compensation.

In the present case the respondent employer knew that its employees were accustomed to heat their luncheon bottles of tea or coffee at the mouth of a large hot-air pipe in the dry-room of its plant, and made no objection thereto. *Held* that such tacit or implied assent by the master to the custom of heating bottles at that particular place could not reasonably be said to involve permission to an employee to go into another room and put his bottle inside of the hot-air pipe through a door therein which opened upon a revolving fan; and that in so conducting himself the employee was not acting within the scope of his employment, nor was there any causal connection between the conditions under which his work was required to be done and the injury to his hand from the revolving fan.

Argued October 7th, 1915—decided January 27th, 1916.

APPEAL by the respondent from an award of the Compensation Commissioner of the first district in

favor of the claimant, taken to and tried by the Superior Court in Hartford County, *Burpee, J.*, upon the findings of the commissioner; the court found that the commissioner had erred in his construction of the Compensation Act and thereupon set aside his award, from which judgment the claimant appealed. *No error.*

The claimant was foreman of the knitting-room of the Glastonbury Knitting Company, where he had been employed for several years, and on the 9th of February, 1915, sustained an injury resulting in the loss of the second, third and fourth fingers, and a portion of the first finger, of the left hand. The commissioner finds that the injury was sustained under the following circumstances: "In the plant of the respondent there was a galvanized iron pipe about one and one half or two feet in diameter, used for conveying heated air into the dry-room. In the room adjoining the dry-room there was an opening in this pipe consisting presumably of a small door. It was a custom of the employees, not prohibited and presumably acquiesced in by the employer, for the employees to heat their bottles of tea or coffee through the instrumentality of the air from this pipe. The usual custom was to heat the bottles in the dry-room at the place where the heated air was emitted. On this particular occasion the claimant, instead of placing his bottle at the mouth of the pipe in the dry-room, went around and attempted to place it inside the pipe through the door hereinbefore described, not knowing that inside the pipe was a revolving fan. It was the contact of the bottle and his hand with the fan which caused the injury. The language of the witness in describing his act was as follows: 'I went into the dry-room and didn't see any place there, and went around in front of the pipe. I did not know there was a fan there. When I put the bottle in, it hit the bottle.' The witness was unable

to recall just why he departed from his usual custom, but was under the impression that something must have been piled up against the opening in the dry-room. The claimant had a right to be in the room in which he was injured, and some of the men whom he supervised worked there."

*William S. Hyde*, for the appellant (claimant).

*A. Storrs Campbell*, for the appellee (respondent).

BEACH, J. The question is whether the claimant's injury arose "out of and in the course of his employment," and the proper construction of that phrase, which now comes before us for the first time, is of great importance, because it controls the determination of what sorts of injuries may properly be brought within the operation of our Workmen's Compensation Act. Public Acts of 1913, Chap. 138, Part B, § 1. The same phrase, used in the same controlling sense, is found in the Workmen's Compensation Acts of England and of many of our States, and in the literary sense its construction appears to be well settled, although the application of it to particular cases has given rise to differences of opinion which are not easily harmonized. It seems to be agreed that the words "arising out of and in the course of his employment" do not make the employer an insurer against all the risks of the business, but include only those injuries arising from the risks of the business which are suffered while the employee is acting within the scope of his employment. In *McNicol's Case*, 215 Mass. 497, 498, 102 N. E. 697, Chief Justice Rugg says of this phrase: "It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It

'arises out of' the employment, when there is apparent
to the rational mind, upon consideration of all the
circumstances, a causal connection between the con-
ditions under which the work is required to be per-
formed and the resulting injury. . . . But it ex-
cludes an injury which cannot fairly be traced to the
employment as a contributing proximate cause and
which comes from a hazard to which the workman
would have been equally exposed apart from the
employment. The causative danger must be peculiar
to the work and not common to the neighborhood. It
must be incidental to the character of the business and
not independent of the relation of master and servant.
It need not have been foreseen or expected, but after
the event it must appear to have had its origin in a
risk connected with the employment, and to have
flowed from that source as a rational consequence." See,
also, *Reed* v. *Great Western Ry. Co.*, L. R. (1909) App.
Cas. 31; *Spooner* v. *Detroit Saturday Night Co.*, 187 Mich.
125, 153 N. W. 657; *Bryant* v. *Fissell*, 84 N. J. L. 72,
86 Atl. 458; Boyd's Workmen's Compensation, § 573;
1 Bradbury's Workmen's Compensation, p. 398.

Was the claimant at the time of the injury doing
the duty which he was employed to perform, and was
there a causal connection between the conditions sur-
rounding the performance of his work and the resulting
injury? In approaching these questions we take into
consideration the fact that the Act is in a very large
sense remedial, and that the legislature intended to
fix upon the employer a liability which, though sound-
ing in contract, need not depend at all upon the breach
of any duty by the employer. *Bayon* v. *Beckley*, 89
Conn. 154, 161, 93 Atl. 139. It is plain enough from
the terms of the Act that when an injury arising from
a risk of the business is suffered while the employee is
doing the thing which his employment fairly requires

him to do, he will be entitled to compensation (except when the injury is caused by the wilful and serious misconduct of the injured employee, or by his intoxication), although he was doing the work in a negligent or unusual way. It is also true that when an injury arising from a risk of the business is suffered while the employee, though not strictly in the line of his obligatory duty, is still doing something incidental to the performance of his work, in going to or from the work, or in the necessary intervals of an intermittent employment, he will (subject to the same exceptions) be entitled to compensation. Finally, the same right to compensation will follow if an injury arising from a risk of the business is suffered while the employee is doing something which, although quite outside of his obligatory duty, is permitted by his employer for their mutual convenience, such as eating his dinner on the premises, or any similar act to the performance of which the employer has assented. *Blovelt* v. *Sawyer* (1903), 20 Times Law Rep. 105; *Morris* v. *Lambeth Borough Council* (1905), 8 Minton-Senhouse W. C. C. 1, 3; *Moore* v. *Manchester Liners, Ltd.*, 3 B. W. C. C. 527; *M'Laughlan* v. *Anderson*, 4 B. W. C. C. 376; *Sundine's Case*, 218 Mass. 1, 105 N. E. 433; *Bryant* v. *Fissell*, 84 N. J. L. 72, 86 Atl. 458; *Northwestern Iron Co.* v. *Industrial Commission*, 160 Wis. 633, 152 N. W. 416. On the other hand, if the injury, although it arise out of a risk of the business, is received while the employee has turned aside from his employment for his own purposes so that he is not acting within the scope of his employment, no compensation can be given. *Reed* v. *Great Western Ry. Co.*, L. R. (1909) App. Cas. 31; *Brice* v. *Edward Lloyd, Ltd.*, 2 B. W. C. C. 26; *Spooner* v. *Detroit Saturday Night Co.*, 187 Mich. 125, 153 N. W. 657; *Keen* v. *St. Clement's Press, Ltd.*, 7 B. W. C. C. 542.

In the present case the commissioner has found, in substance if not in words, that the employer knew of the employees' custom of heating bottles in the dry-room at the mouth of the hot-air pipe, and, upon principles familiar to courts before compensation Acts were invented, the right to so heat bottles became, by the tacit consent of the employer, a term or condition added to the contract of employment; so that if the injury, which clearly arose from a risk of the business, had occurred while the claimant was engaged in heating his bottle at the customary time and place, he would doubtless have been entitled to compensation.  The finding does not inform us whether the injury was received at a time when it was customary for the employees to place their bottles for heating; and in the absence of any finding as to that fact we cannot say as a matter of law that it was unreasonable for a foreman, whose supervisory duties are not necessarily continuous, to place his bottle for heating at 11:30 A. M. at which time the accident occurred.  The precise question, therefore, is whether the claimant, in attempting to heat his bottle in a place which was not the customary place and was not a place whose use for the purpose of heating bottles had been assented to by the employer, was acting within the scope of his employment.  This question is not in principle a new one, and it may be answered by pointing out that an act which is quite outside of the servant's duties, and is not in itself, or in the manner of doing it, a consequence of the conditions surrounding the performance of those duties, cannot be brought within the scope of the employment except by proof of the special assent of the employer, actual or imputed.  In ascertaining the scope of the servant's employment it has long been the rule to take into account what the servant was required to do, the conditions surrounding the

performance of his work, and, also, whatever else, with the knowledge and assent of the employer, he actually did do. Further than that we cannot go, because the relation is contractual, and, except by a valid exercise of the police power, its terms cannot be enlarged or varied without the consent of both parties.

It is quite true, under the Workmen's Compensation Act, that when the scope of the employment is once ascertained, any injury arising out of and in the course of it is to be compensated for although the employee acted in a negligent or unusual way. This is the principle on which the claimant's counsel relies; contending that the scope of the employment had been enlarged by the known custom of heating bottles at the mouth of the hot-air pipe, and that, therefore, the claimant is entitled to compensation although he attempted to heat his bottle on this occasion in an unusual way. But when the injury arises from his own act, the claimant must first show that the act which caused it was within the scope of his employment; and if the act is one which has no direct relation to his employment, or to the conditions surrounding the work, there is no presumption that the master has assented to it in advance, and therefore it cannot be brought within the scope of his employment at all except by evidence affirmatively showing that it was done with the knowledge and assent of the employer. And if the knowledge and assent of the employer, as shown by the evidence, is limited to a particular way of doing such an act, it follows that the act, if done in an unusual way, may or may not be within the scope of the employment according to the circumstances of the case. As to such acts the scope of the employment is co-extensive with the master's knowledge and assent. The scope of the employment is to be determined, like the scope of any other contractual relation, by the

mutual intent of the parties, which, in a case like this, ultimately rests on the intent of the master, to be ascertained upon the principle that one intends the natural consequences of that which he has permitted to be done.

The issue, then, takes the form of an inquiry whether the claimant's act in putting his bottle into the hot-air pipe in an adjoining room was a natural consequence of the master's permission to heat bottles in the dry-room at the mouth of the hot-air pipe; so that the master, in assenting to the latter custom of heating bottles, may fairly be said to have assented also to the claimant's deviation from that custom.

We think not. The finding is that the usual custom was to heat the bottles in the dry-room at the place where the heated air was emitted. In the room adjoining the dry-room there was an opening in this pipe consisting presumably of a small door. On this particular occasion the claimant, to quote the language of the commissioner, "instead of placing his bottle at the mouth of the pipe in the dry-room, went around and attempted to place it inside the pipe through the door hereinbefore described, not knowing that inside the pipe was a revolving fan." We think it is quite clear that the master's assent to the custom of heating bottles in the dry-room at the mouth of the pipe cannot reasonably be said to involve his assent to the claimant's act of going into another room and attempting to put his bottle inside of the hot-air pipe through a door which led to a revolving fan. The finding of the commissioner does not contain any facts which tend to show that the master ought reasonably to have expected the claimant to do this; and in the absence of any such findings of fact we think there was nothing from which the commissioner could reasonably conclude that the employer had, in effect, assented in

advance to the performance of the act which caused the claimant's injury. In *Keen* v. *St. Clement's Press, Ltd.*, 7 B. W. C. C. 542, the claimant was placing a tin of milk on a ledge underneath the moving machinery of a press when his hand was injured by coming in contact with a revolving plate. It was customary for the workmen to take tea at five o'clock and to prepare their tea beforehand; and the claimant had gone to the place where the hot water urn was kept and had returned with the tea when he was injured. The only point in which he went outside of the custom as known to the employer was in putting the tin of milk under the press to hide it from the night shift; and the Court of Appeals held that because the employer had no knowledge of any custom of placing tins of milk under the press the accident did not arise out of the claimant's employment. That case is very like the present one in all material points. Here, as there, the act which resulted in the injury was outside of the servant's duty and not one which was a consequence of the conditions surrounding the performance of his work,—or of conditions to which the master could fairly be said to have assented; and it subjected the claimant to the added risk from which the injury resulted. In this case it is apparent that the injury did not arise out of the employment, because there was no causal connection between the conditions under which the claimant's work was required to be done and the resulting injury.

There is no error.

In this opinion PRENTICE, C. J., THAYER and RORABACK, Js., concurred.

WHEELER, J. I concur in the result, and in the holding that the claimant, when injured, was not doing his employer's work, but doing something in his own way—

and a way not permitted by his employer—and for his own benefit, and hence his injury did not arise out of his employment.

I agree with the doctrine of *Keen* v. *St. Clement's Press, Ltd.*, 7 B. W. C. C. 542, and *McNicol's Case,* 215 Mass. 497, 102 N. E. 697, as cited, in their holding that the terms arising "in the course of the employment" and arising "out of the employment" are independent and conjunctive terms.

I do not concur generally in the opinion through my fear that it confounds these terms and treats and holds them to be equivalents. And further, because I fear that the opinion holds that the claimant was not at the time of his injury in the course of his employment, and I am of the opinion that he was, and that his momentary departure from his work to do something for his own benefit, although permitted by his master so to do yet done in a manner and place not permitted, did not take him at the time of his injury out of the course of his employment. The authorities seem to support this view. *Moore* v. *Manchester Liners, Ltd.*, L. R. (1910) App. Cas. 498, 500; *Fitzgerald* v. *Clarke & Son* (1908), 99 Law Times Rep. 101, 1 B. W. C. C. 197, 201; *Robertson* v. *Allan Bros. & Co.* (1908), 98 Law Times Rep. 821, 1 B. W. C. C. 172; *Sundine's Case,* 218 Mass. 1, 105 N. E. 433; *Bryant* v. *Fissell,* 84 N. J. L. 72, 86 Atl. 458, 460.