MARGARET LARKE *vs.* JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY ET AL. (JOHN HANCOCK MUTUAL LIFE INSURANCE COMPANY'S APPEAL FROM COMPENSATION COMMISSIONER).

Third Judicial District, Bridgeport, October Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Upon a claim by a dependent wife for compensation under the Workmen's Compensation Act, the commissioner found that the claimant's husband froze his nose and suffered a frost-bite, and that as a direct result of such injury he contracted erysipelas, from which he died. *Held* that the evidence before the commissioner was such as to warrant him in reaching these conclusions.

Whether "personal injury," as used in our Act, includes disease apart from an accident, it certainly does include it where, as in the present case, the disease is the direct and immediate consequence or result of an accidental bodily injury.

Generally speaking, and without attempting to frame an all-embracing definition, an injury to an employee may be said to arise "in the course of his employment," when it occurs within the period of his employment, at a place where he reasonably may be, and while he is reasonably fulfilling the duties of his employment, or is engaged in doing something incidental to it. The words quoted point to the time, place and circumstances under which the accident occurred.

In the present case the decedent contracted frost-bite while driving from place to place, in his known and customary way, upon his employer's business; and therefore sustained his injury, as the trial court found, "in the course of his employment."

An injury "arises out of" an employment when it occurs in the course of the employment and as a proximate cause of it, that is, when the injury is a natural and necessary incident or consequence of the employment, though not foreseen or expected. The phrase points to the origin or source of the injury, and presupposes the existence of a causal connection between it and the employment.

The employee's duties in the present case required him to drive fifteen or twenty miles on a very cold day and make fifty or more calls in heated houses, thus forcing him to a far greater exposure to the severity of the weather and the danger to frost-bite than that incurred by the ordinary person in that locality. *Held* that under these circumstances the injury might fairly be said to "arise out" of" the employment.

If the primary injury arises out of the employment, everything which flows from it as a consequence likewise arises out of the employment: for the chain of causation is not to be broken.

Argued October 28th, 1915—decided April 19th, 1916.

APPEAL from a decision of the Compensation Commissioner of the fifth district awarding compensation to the plaintiff for the death of her husband from injuries arising out of and in the course of his employment by the defendant Life Insurance Company, taken to and tried by the Superior Court in New Haven County, *Case, J.;* the court sustained the findings and award of the commissioner and dismissed the appeal, and from this judgment the defendants appealed. *No error.*

The commissioner found the following facts: The claimant was living with Henry J. Larke prior to his decease as his wife, and was entirely dependent upon him for support. Larke had had a contract of employment with the defendant Insurance Company for more than twenty-six weeks next before his death, and had been in the employ of this company for eleven years, soliciting insurance and collecting insurance premiums. He was under the supervision of Mr. Radie, the district manager for the company, who laid out the routes for him from day to day.

The route for Thursday, February 26th, 1914, covered from fifteen to twenty miles, and on Friday, February 27th, 1914, from five to twelve miles, and embraced a number of different places, to reach which and cover the route, required the use of a private conveyance, and was through a region unprovided with public conveyances available for Larke's requirements in the regular course of his business, and Larke's business required him to visit definite persons and places at definite times irrespective of weather conditions.

Prior to February 26th, Larke was of good health and of rugged physique.

February 26th was an unusually cold day. About 5:45 A. M. of that day Larke left his home and drove fifteen or twenty miles in the regular course of his employment, and during this time suffered a personal injury, viz. the freezing of his nose and the tissues adjacent thereto, which produced a lesion of the skin and surface tissues of the area adjacent thereto. As a direct result of these injuries he contracted erysipelas from which he died.

His injuries were not due to any serious or wilful misconduct, nor to intoxication, but arose out of and in the course of his employment.

From the award made the respondents appealed to the Superior Court, and from its judgment dismissing the appeal the appeal to this court is taken.

*Francis P. Guilfoile,* with whom was *Frank P. Mc-Evoy,* for the appellants (defendants).

*Walter E. Monagan,* for the appellee (plaintiff).

WHEELER, J. Several of the assignments of error are based upon findings which are claimed to be without the evidence or contrary to it. Two of these are of importance to the decision. One is, that the decedent, on Thursday, February 26th, froze his nose and the tissues adjacent thereto and then suffered a frost-bite.

There was evidence that the day was very cold; that the decedent, a robust and healthy man, left his home at quarter to six in the morning of this day and drove in the course of his business fifteen or twenty miles, making about fifty calls by going in and out of heated buildings; that when he returned home at two P. M. he complained of not feeling well, and that his face

around the nose and eyes was a little red and around the nose was swollen. On the following afternoon a physician diagnosed his case as frost-bite, and a physician testified that the assumed facts of this case, as claimed by the plaintiff, presented a case of frost-bite. No physician testified otherwise, and no other evidence was offered in contradiction. Here were conditions which might have produced a frost-bite, symptoms which indicated it and a diagnosis of its existence on the succeeding day, and the opinion of a reputable physician based upon the symptoms and conditions in evidence that the decedent suffered' a frost-bite on this Thursday. No conclusion other than that reached by the commissioner would have been a reasonable one.

Another finding, that "as a direct result of these injuries he contracted erysipelas," is claimed to be unsupported by the evidence and scientifically impossible. The claim rests upon the assumption that the plaintiff's theory of the evidence is that the skin was punctured by frost-bite suffered on this Thursday, and that the erysipelas developed on Friday, and upon the claim of the defendants that the medical testimony demonstrates that the first visible indication of erysipelas occurs in not less than thirty-nine hours after the infection, hence the erysipelas could not have developed from the frost-bite. The assumption that the erysipelas developed on Friday, results from reliance upon Mrs. Larke's testimony that her husband told her that Dr. Goldstein had told him on Friday afternoon that he had erysipelas. The statement of what the husband said the doctor had said has no probative value as evidence, and the fact that it came in as a part of the cross-examination does not add to its probative value. But the Doctor testified he diagnosed the case on Friday as frost-bite and on a later visit either on the first, or, as he thinks, the second day following, he for the first

time diagnosed the case as erysipelas. If Mrs. Larke's testimony in this particular could be regarded as evidence of probative value, it was for the trier to find the fact in the conflict between her testimony and that of the Doctor, and likewise it was for the trier to determine the credibility of the Doctor's testimony.

The first question for decision is whether the frost-bite of the decedent was a personal injury "arising out of and in the course of his employment." Public Acts of 1913, Chap. 138, Part B, § 1. The suggestion was made in argument, although not greatly pressed, that "personal injury" under our statute refers merely to accidental injury. The case does not at this time require us to pass upon the question whether the term "personal injury" in our Act includes disease as well as accident. Upon all authority, if it refers merely to accident, it must include the consequences of the accident, whether a development of the injury from the derangement of the physical structure of the body, or of a disease from the accident. The finding shows that the unusual exposure of the decedent to the weather, due to his employment, caused a frost-bite producing lesions of the face, through which the germ erysipelas entered and the disease erysipelas developed. We think the lesion, whether produced by a frost-bite or a blow, must be held to be a "personal injury" within the Act. In either case, the injury would be the result of an untoward mishap. If the term "personal injury" be given its narrowest construction and confined to injuries of accidental origin, it must be held to include any form of bodily harm or incapacity, whether arising by direct contact, or lesion caused by external violence or physical force, or untoward mishap. *Canada Cement Co.* v. *Pazuk*, 22 Que. K. B. 432, 7 N. & C. C. Ann. 982; *Sheeran* v. *Clayton & Co., Ltd.* (1910), 44 Ir. L. T. 23, 3 B. W. C. C. 583; *Ismay, Imrie & Co.* v. *Williamson,*

L. R. (1908) App. Cas. 437, 99 Law Times Rep. 595. An attempt to frame an all-embracing definition so as to include all injuries arising in the course of one's employment, would probably prove its inadequacy under the changing conditions of time. In a general way, sufficient for this case, and perhaps helpful in the consideration of other cases, we may say that an injury to an employee is said to arise in the course of his employment when it occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it. "In the course of" points to the place and circumstances under which the accident takes place and the time when it occurred. *Moore* v. *Manchester Liners, Ltd.*, L. R. (1910) App. Cas. 498, 500; *McNicol's Case*, 215 Mass. 497, 102 N. E. 697; *Bryant* v. *Fissell*, 84 N. J. L. 72, 86 Atl. 458, 460. The period of employment has sometimes been held to cover a period other than that for which wages are paid. The place of employment in some cases has been held to include the places upon the master's premises traversed by the employee in going to and from his work, and the places used by the employee with the master's consent. The duty ancillary or incident to the employment has, in some instances, been held to include the doing of something primarily for the benefit of the employee, but ultimately, it is assumed, for the master, as the preparation of a noon-hour lunch, or the doing of something by the employee which he reasonably believes is for the master's interest. These distinctions and their application to given cases furnish difficult questions for decision.

The circumstances surrounding the case of Mr. Larke are free from these difficulties. He contracted frostbite while driving from place to place upon his master's

business in the customary way and in a way known to the master, and therefore he suffered his injury, as the trial court found, in the course of his employment.

Passing the claim for a correction of the finding, the most seriously contested question is whether the injury of the decedent arose "out of" his employment. An injury which occurs in the course of the employment will ordinarily arise out of the employment; but not necessarily so, for the injury might occur out of an act or omission for the exclusive benefit of the employee, or of another than the master, while the employee is engaged in the course of his employment. In order to restrict, beyond the reach of question, the words "in the course of the employment," the words "arising out of" were added, so that the proof of the one without the other will not bring a case within the Act. The term "arising out of" in this Act points to the origin or cause of the injury. *Fitzgerald* v. *Clarke & Son,* L. R. (1908) 2 K. B. Div. 796, 799. It presupposes a causal connection between the employment and the injury. Speaking generally, an injury "arises out of" an employment when it occurs in the course of the employment and as a proximate cause of it. An injury which is a natural and necessary incident or consequence of the employment, though not foreseen or expected, arises out of it. *McNicol's Case,* 215 Mass. 497, 102 N. E. 697; *Bryant* v. *Fissell,* 84 N. J. L. 72, 86 Atl. 458. If the nature of the employment, or the conditions under which it was pursued, or the exposure to injury it entails, or the doing of something incidental to the employment, was a proximate cause of the injury, it arises out of the employment. An injury of this description is one of the risks of the employment, for it is due to it and arises from it, either directly, or as incident to it, or to the conditions and exposure surrounding it. And the proximate cause

of the injury is not necessarily that which immediately arises out of the employment, but may be that which is reasonably incidental to it. *Sponatski's Case*, 220 Mass. 526, 108 N. E. 466.

The conditions of employment which expose the employee to an injury which arises out of the employment are such as are peculiar to this employment, and not such exposures as the ordinary person is subjected to. It is therefore immaterial where the exposure originates, whether from the employment, or outside of it. In the one case the conditions of danger from the conduct of the employment cause it: in the other the conditions of danger which arise outside the employment but are peculiar to it cause it. *Amys* v. *Barton*, 105 Law Times Rep. 619; *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 96 Atl. 368. But if injury results to an employee from the doing of something which the employment neither required nor expected, or in a place where his employment should not take him, it cannot be said to arise out of the employment. Unless the conditions under which Larke pursued his employment exposed him to the danger of frost-bite and this exposure was peculiar to his employment and not shared by the ordinary person, no causal connection between the frost-bite and the employment can be found. If the employment brings with it no greater exposure to injurious results from natural causes, and neither contributes to produce these nor to aggravate their effect, as from lightning, or severe heat or cold, than those to which persons generally in that locality, whether so employed or not, are equally exposed, there is no causal connection between the employment and the injury; but where "the employment brings with it greater exposure and injury results," the injury does arise out of the employment.

Turning to the finding, we think it presents a clear

case of an employee injured as a result of a greater exposure to the elements than persons in that locality are ordinarily subjected.  Mr. Larke's employment, which compelled him to drive fifteen or twenty miles on a very cold day, going in and out of heated houses in making upward of fifty calls, exposed him to the severity of the weather and to the danger of frost-bite very much more than the ordinary person in that locality was exposed.  The risk of frost-bite to Mr. Larke was either created or greatly aggravated by his employment, which subjected him to open air work in severe cold.  The immediate cases are not numerous, but this distinction has been recognized in *Canada Cement Co.* v. *Pazuk*, 22 Que. K. B. 432, 7 N. & C. C. Ann. 482.  In England, in *Warner* v. *Couchman*, L. R. (1911) 1 K. B. Div. 351, 4 B. W. C. C. 32, a contrary conclusion was reached, but, as Prof. Bohlen pointed out in 25 Har. Law Rev. 534, this decision cannot be reconciled with *Pierce* v. *Provident Clothing & Supply Co. Ltd.*, L. R. (1911) 1 K. B. Div. 997; and we incline to the view that ultimately the test which Moulton, L. J., applied in *Warner* v. *Couchman*, and which our Superior Court, *Case, J.*, applied in the case of Dorrance v. New England Pin Co., 1 Nat. Comp. Jour. (July 14th, 1914) 23, and which we adopt, will be generally recognized as based on the sounder reason and as furnishing a rule more just in its application than any so far considered.

Erysipelas developed from the frost-bite; the finding on this point is conclusive.  If the primary injury arises out of the employment, every consequence which flows from it likewise arises out of the employment. The chain of causation may not be broken.  Every injurious consequence flowing from it is a part of this chain.  It is immaterial that erysipelas does not ordinarily result from frost-bite; it is enough if in this

instance it be caused by it. All physical consequences and disease result from an injury when there is a causal connection between them. *Sponatski's Case,* 220 Mass. 526, 108 N. E. 466; *Burns' Case,* 218 Mass. 8, 105 N. E. 601; *Hurle's Case,* 217 Mass. 223, 104 N. E. 336. For all such, which arise in the course of and out of one's employment and not in consequence of one's own wilful and serious misconduct or intoxication (Part B, § 1), the Act gives the right to compensation.

There is no error.

In this opinion the other judges concurred.