ALEXANDER JACQUEMIN ET AL. *vs.* THE TURNER AND SEYMOUR MANUFACTURING COMPANY (THE TURNER AND SEYMOUR MANUFACTURING COMPANY'S APPEAL FROM COMPENSATION COMMISSIONER).

First Judicial District, Hartford, January Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

An injury "arises out of" an employment, within the meaning of that expression in our Workmen's Compensation Act, when it occurs in the course of the employment and is a natural and necessary incident or consequence of it, though not foreseen or expected. Such an injury may arise either directly from the employment or as incident to it, or from the conditions and exposure surrounding the employment.

Injuries which are likely to occur because of the character of the business or of the conditions under which -t is carried on, and which were, or should have been, contemplated by the employer, are properly held to "arise out of" the employment; but a personal injury to an employee resulting from a quarrel and fight with another employee over a ladle for pouring molten metal, which each desired to use at once in order to finish his work and get away for the day, is not one which "arises out of" his employment; at least in the absence of a

finding of the existence of some reasonable causal connection between such injury and the employment or the conditions under which it is pursued.

Argued January 2d—decided March 12th, 1918.

APPEAL by the defendant from a finding and award of the Compensation Commissioner of the fifth district in favor of the plaintiffs, taken to and tried by the Superior Court in Litchfield County, *Maltbie, J.;* the court confirmed the award and dismissed the appeal, and from this judgment the defendant appealed. *Error; judgment to be rendered vacating the award.*

The Commissioner found the following facts: The Turner and Seymour Manufacturing Company is engaged in making iron castings. The casters, when they have poured the molten metal into the molds, leave for the day. The company did not desire to have too many casters around the cupola, where the molten metal is drawn out, and did not desire the casters to get through their work too early. As one means of accomplishing these two results, the company supplied a limited number of ladles. As a result of this condition each caster desired to get a ladle as soon as possible so as to pour his molds and get away.

On April 10th, 1917, O'Shaugnessy, a caster, located quite a distance from Jacquemin, another caster, received permission from a caster to use a ladle which had been in use by him. O'Shaugnessy and his helper were pouring from this ladle when Jacquemin and his helper started to pick up another ladle which stood in front of Jacquemin's floor and had been placed there by Jacquemin. O'Shaugnessy ordered him to let it alone or he would get in trouble. Angry words passed between the men, and O'Shaugnessy, leaving his own ladle partly filled, started for Jacquemin, who advanced to meet him. They scuffled and fell to the floor, first one and

then the other was on top. O'Shaugnessy got Jacquemin in a position where he was likely to spoil the mold. Jacquemin called this to the attention of O'Shaugnessy and he let Jacquemin up, and immediately Jacquemin started for him again. Thereupon O'Shaugnessy struck Jacquemin in the region of the heart and the blow resulted in his death. No personal animosity existed between the men, and neither was quarrelsome. The controversy arose over the possession of a tool which each wanted to use in order that he might get through his work and get away.

*A. Storrs Campbell,* for the appellant (defendant).

*Walter Holcomb,* for the appellees (plaintiffs).

WHEELER, J. The argument upon the appeal was confined to the single point, did the injury "arise out of" the employment of Jacquemin.

In *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 309, 97 Atl. 320, we held that an injury "arises out of" an employment when it occurs in the course of the employment and is a natural and necessary incident or consequence of it, though not foreseen or expected; and that such an injury may arise either directly from the employment or as incident to it, or to the conditions and exposure surrounding it. If one employee assaults another employee solely to gratify his feeling of anger or hatred, the injury results from the voluntary act of the assailant and cannot be said to arise either directly out of the employment, or as an incident of it. But when the employee is assaulted while he is defending his employer, or his employer's property, or his employer's interests, or when the assault was incidental to some duty of his employment, the injuries he suffers in consequence of the assault will, as a rule, arise out of the

employment. He will then be serving his employer's ends and not his own. Many cases have arisen where watchmen, gamekeepers, or other employees have suffered injury through assault while protecting their employers' interests or while engaged in fulfilling the duty arising out of their employment. Examples of these are: *Ohio Building Safety Vault Co.* v. *Industrial Board*, 277 Ill. 96, 115 N. E. 149; *Shafter Estate Co.* v. *Industrial Accident Commission*, 175 Cal. 522, 166 Pac. 24. Examples of cases of assaults originating solely through the anger or vindictiveness of an employee, are: *Griffin* v. *Roberson & Son*, 176 N. Y. App. Div. 6, 162 N. Y. Supp. 313; *Union Sanitary Mfg. Co.* v. *Davis* (Ind. App.), 115 N. E. Rep. 676.

Between these classes of cases is a class of cases which seems to be an exception; in reality these cases concern injuries which are incidental to the employment. Thus, in *McNicol's Case*, 215 Mass. 497, 102 N. E. 697, recovery was allowed for injuries from an assault by an employee known by the superintendent in charge to be in the habit of drinking to intoxication, and when so, to be quarrelsome and dangerous, and with such knowledge the superintendent permitted him to continue at work. In *State ex rel. Anseth* v. *District Court*, 134 Minn. 16, 158 N. W. 713, a bartender was struck by a glass thrown by a patron of a saloon who was so drunk he did not know the nature of his act. In holding that the injuries of the bartender arose out of the employment, the court said: "The court will take judicial notice that the position of bartender, patron, or spectator in a saloon, especially in one situated where rough characters are apt to congregate and carouse, is quite apt to be one of peculiar danger. Barroom assaults are not of infrequent occurrence." Injuries so arising are such as the character of the business or the conditions under which it is carried on make likely, and the result

either was, or should have been, in the contemplation of the employer. They are correctly held to arise out of the employment.

The Commissioner conceived that the case of Jacquemin fell within this distinction. He held that the method of conducting the business, so that the casters would naturally crowd about the cupola and so that an insufficient number of ladles should be provided for the casters, would naturally lead to dispute among them, and that Jacquemin suffered his injury as a consequence, and hence it arose out of his employment. The Superior Court reached a similar conclusion, saying: "The injury in the case before us seems to me to have directly resulted from the circumstances of the employment of the decedent, as they are detailed in the finding of the Commissioner. Human nature being what it is, that altercations and blows would occur between the workmen would be a result reasonably to be anticipated."

The finding does not disclose that the conditions under which this business was conducted had ever before occasioned a similar trouble, or that either of the men were quarrelsome. There was nothing to put the employer on notice. It was the duty of the employees to do their work under the established conditions. O'Shaughnessy asserted a right over Jacquemin's ladle which he did not have. He began the quarrel and fight. These were purely personal. They had no relation to the special conditions of the business so far as the finding shows. And when Jacquemin had full opportunity to have desisted from the fight he chose to renew it and thereafter received his injury. The fight occurred in the course of the employment, but it did not originate in it or arise as a consequence or incident of it. These men turned temporarily from their work to engage in their own quarrel. Nothing

their employer required of them would necessarily provoke them to a quarrel, nor could this have been reasonably anticipated. The fact that employees sometimes quarrel and fight while at work, does not make the injury which may result one which arises out of their employment. There must be some reasonable connection between the injury suffered and the employment or the conditions under which it is pursued.

The case at bar resembles closely *Union Sanitary Mfg. Co.* v. *Davis* (Ind. App.), 115 N. E. Rep. 676, where a molder was injured as a result of a quarrel with a fellow employee over the repair of a ladle and his duty did not include such repairing. It was held that the injury did not arise out of the employment. The Commissioner relied for his authority upon *Heitz* v. *Ruppert*, 218 N. Y. 148, 112 N. E. 750. That case may perhaps be distinguishable from this because Heitz, unlike Jacquemin, was passive and he was injured while actually at his work. Whether we should upon the same facts reach a like conclusion need not now be determined. Certainly the case bears some resemblance to the cases of skylarking or horseplay. Guth slapped Heitz on the shoulder, and as he turned Guth's finger stuck in Heitz's eye. It is not easy to see how the slapping of Heitz can be said to be an incident of the employment any more than any other form of horseplay.

There is error, the judgment is reversed and the cause is remanded with direction to the Superior Court to render judgment sustaining the appeal from the Commissioner and vacating his award.

In this opinion the other judges concurred.