MARY REEVES *vs.* JOHN A. DADY CORPORATION.

First Judicial District, Hartford, October Term, 1920.

WHEELER, C. J., BEACH, CASE, CURTIS and BURPEE, Js.

The plaintiff's husband was employed as overseer on the second story of defendant's mill. The recital to him by the superintendent of the mill, of the details of a surgical operation, produced a condition of faintness and he went to an open doorway to get some air. The doorway was protected by a three inch bar about three feet from the floor. While standing there, his hands were seen to slip from the bar, his knees to give way, and he collapsed and fell through the opening between the bar and the floor and was killed. The faintness was not due to any conditions connected with his

Reeves *v.* Dady Corporation.

employment. *Held* that the plaintiff was not entitled to compensation, since the injury did not "arise out of" the decedent's employment. (*Two judges dissenting.*)

It is not necessary to prove that the employment, or some condition connected with it, was the proximate cause of the injury. It is sufficient if some causal connection is shown between the employment and the injury; but such connection does not arise merely because an employee is injured in the course of his employment.

A workman, especially when employed in a supervisory capacity, may be "in the course of his employment" although he has temporarily departed from the performance of his duties and is doing something irrelevant thereto; but an injury sustained by him during such departure and caused thereby, does not "arise out of" his employment, and therefore does not entitle him to compensation.

Submitted on briefs October 5th, 1920—decided January 26th, 1921.

APPEAL by the plaintiff from the refusal of the Compensation Commissioner of the second district to award her compensation for a personal injury to her husband resulting in his death, upon the ground that the injury did not arise out of his employment, taken to and tried by the Superior Court in Windham County, *Keeler, J.;* the court affirmed the decision of the Commissioner, and from this judgment the plaintiff appealed. *No error.*

The plaintiff's husband was employed as overseer of the winding-room on the second story of the defendant's silk mill in Putnam, and was killed by falling through an open doorway to the ground below. The accident happened during working hours. The doorway was protected by a three inch bar about three feet from the floor. The decedent was in good health, the room was large, well lighted, free from dust or smoke, and at the time of the accident the temperature was normal. Shortly before the accident the superintendent of the mill was describing to the decedent the details of a surgical operation, whereupon the decedent said, "That makes me faint," and after declining assistance walked

to the doorway to get some air.   While standing there his hands were seen to slip from the bar, his knees to give way, and he collapsed and fell through the opening between the bar and the floor.   The commissioner found that the cause of the decedent's falling from the doorway was a sudden faintness due to the recital of the details of a surgical operation, and that the faintness did not arise out of anything connected with his employment.   On these findings, which are not disputed, the commissioner held that the injury did not arise out of and in the course of the decedent's employment, and dismissed the claim.   The Superior Court, on appeal, confirmed the award of the commissioner and rendered judgment for the defendants.

*John F. Carpenter*, for the appellant (plaintiff).

*William B. Ely*, for the appellee (defendant).

BEACH, J.   The only difficulty in the case arises from the fact that the decedent fell through a doorway to which his employment permitted him to go, although it did not require him to be there at that time.   If there were no direct evidence of the cause of his injury and death, it might be inferred that he went there for some purpose connected with his employment.   *Saunders* v. *New England Collapsible Tube Co.*, 95 Conn. 40, 110 Atl. 538.   On this record, however, that inference is rebutted by the uncontested finding that he went to the doorway for a purpose not connected with his employment, and that he fell through it because he fainted away while standing there.   It is also found that his faintness was not due to any conditions connected with his employment, and not due to any disability which he brought to his employment.   It is not necessary for the claimant to prove that the employment, or some condi-

tion connected with it, was the proximate cause of the injury. *Fiarenzo* v. *Richards & Co.*, 93 Conn. 581, 107 Atl. 563. But there must be some causal connection between the employment and the injury. *Larke* v. *Hancock Mut. Life Ins. Co.*, 90 Conn. 303, 309, 97 Atl. 320. As Chief Justice Rugg has said, the causative danger must appear to have had its origin in a risk connected with the employment, and to have flowed from that as a rational consequence. *McNicol's Case*, 215 Mass. 497, 102 N. E. 697.

We are unable to find any operative causal connection between the employment and the injury in this case. While the open doorway protected by a bar was in some degree potentially dangerous, there is no finding that it was actually dangerous to a person in good health who might stand at or near it. The real operative and causative danger in this case did not arise until the decedent stood at the doorway in a fainting condition; and the finding is explicit that there was no causal relation between his employment and his being at the doorway while in that condition. In this respect the case at bar differs sharply from *Wicks* v. *Dowell & Co.*, L. R. (1905) 2 K. B. Div. 225, where the decedent was an epilepetic and his employment compelled him to stand on the edge of the opening into which a stroke of epilepsy precipitated him. All the other cases relied upon by the claimant are consistent with the rule that the causative danger must have its origin in a risk connected with the employment and flow from it as a rational consequence. That being so, and the employee being in the course of his employment, the fact that he voluntarily moved toward the spot where the accident occurred, is immaterial. *Robinson* v. *State*, 93 Conn. 49, 104 Atl. 491; *De Luca* v. *Park Commissioners*, 94 Conn. 7, 107 Atl. 611; *Fiarenzo* v. *Richards & Co.*, 93 Conn. 581, 107 Atl. 563; *Procaccino* v. *Horton & Sons*,

95 Conn. 408, 111 Atl. 594. In this case the decedent did not fall out of the doorway through carelessness or because of any disability which he brought to his employment; but because of a sudden faintness due to a definitely ascertained cause, which had no connection with his employment. The finding leaves no room for inference. His hands were seen to slip from the bar, his knees to give way, and his body collapsed and fell out between the bar and the floor.

It is said that because the decedent was in the course of his employment when the injury occurred, and because the open doorway was a continuing risk of the employment, that therefore the injury in question arose out of the employment, and the claimant is entitled to compensation. Ordinarily that would be true, but it is not necessarily true. Ordinarily the fact that the employee is in the course of his employment is the very thing which subjects him to the risks of his employment; and therefore a causal relation between the injury and the employment will generally exist whenever an employee in the course of his employment is injured by a risk incident to his employment. But the term "in the course of his employment," is sufficiently elastic, especially when the employment is in a supervisory capacity, to permit the employee to depart temporarily from the performance of his contract of employment without departing from the course of his employment; and if, because of such a temporary departure from the performance of his duties, the employee is injured by a risk incidental to his employment while he is doing something utterly irrelevant to the employment, he cannot recover. *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 96 Atl. 368, is a good illustration of this. In that case the plaintiff, a foreman, undertook to put a bottle of milk into a hot-air pipe and his hand came in contact with a revolving fan.

He was in the course of his employment and the injury was caused by a hazard incidental to his employment, but we held that he could not recover because the injury was directly caused by a temporary departure on his part from his employment, and therefore did not arise out of the employment. The general proposition involved was stated in *Larke* v. *Hancock Mut. Life Ins. Co.*, 90 Conn. 303, 309, 97 Atl. 320, as follows: "An injury which occurs in the course of the employment will ordinarily arise out of the employment; but not necessarily so, for the injury might occur out of an act or omission for the exclusive benefit of the employee, or of another than the master, while the employee is engaged in the course of his employment."

In this case the acts and omissions leading to the injury, beginning with the conversation between the decedent and the superintendent, and continuing without any break in the chain of causation to the fall through the open doorway, were wholly irrelevant to the decedent's employment, and the injury did not arise out of his employment, but out of a temporary departure therefrom.

There is no error.

In this opinion CASE and BURPEE, Js., concurred.

WHEELER, C. J. (dissenting). I am unable to agree with the opinion of the majority. The commissioner held that the injury arose "in the course of the employment" but did not "arise out of" the employment, and denied compensation. The plaintiff appealed and the trial court dismissed the appeal. The plaintiff appeals from this judgment, for error of the trial court in deciding that the injury did not arise out of and in the course of the employment, and from the judgment dismissing her appeal.

Plaintiff is mistaken in assigning as an error of the trial court, its holding that the injury did not arise in the course of the employment.  Both the trial court and the commissioner held that the injury did arise in the course of the employment, but did not arise out of the employment.  The sole question in the case is, did the injury arise out of the employment?

The room in which the accident happened was a large room occupying the entire second floor of the Dady Corporation silk mill.  The decedent fell from an open doorway, protected not otherwise than by a three-inch bar across the doorway some three feet from the floor. The place in front of the doorway was one where the employees in this room and the decedent overseer of this room had the right to be in the course of their employment.  A fall from this doorway to the hard-surface walk fifteen feet below, was almost certain to be dangerous to the life or body of whoever should so fall. If any employee, or the overseer, were close to and looking out of this doorway and became faint, or if he unexpectedly tripped while near the doorway, he was liable to fall under or over this narrow bar.  It was an existing condition of the employment and a risk incident to the employment and the condition under which it was carried on.

"An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed."  *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799.  When we say the injury is the result of a risk involved in the employment, or incident to it, or to the conditions under which it is required to be performed, we mean a risk connected with the employment or incident to it, or to the conditions under which it is required to be performed.  The injury

is involved in or connected with the employment, when there be present in the circumstances of the accident some causal connection between the employment, or the conditions under which it is required to be performed, and the injury. *Larke* v. *Hancock Mut. Life Ins. Co.*, 90 Conn. 309, 97 Atl. 320; *McNicol's Case*, 215 Mass. 497, 102 N. E. 697. The faintness had nothing to do with the risk involved or connected with the condition of danger from the open doorway under which this business was conducted. The proximate cause of the decedent's injury was his fall, the proximate cause of his fall was his physical condition. That may have been idiopathic, or due to his own fault, or to something that had occurred while he was outside the course of his employment. In each case if, as a result of his physical condition, he fell and injured himself, the fall caused the injury and the physical condition the fall.

In *Wicks* v. *Dowell & Co.*, L. R. (1905) 2 K. B. 225, a workman employed in unloading coal from a ship was seized with an epileptic fit while at work, and fell into the hold and was injured. Collins, M. R., thus discusses the point as to whether the injury sustained "arose out of the employment": "But those authorities are in my judgment directly in point. A man is picked up at the bottom of the hold of a ship suffering from injuries; what is the cause of his condition? The proximate cause obviously is that he has fallen from a height. But it is suggested that if the occurrence is analyzed, it will be seen that the accident was caused by the idiopathic disease from which the man was suffering, and that therefore the accident did not arise out of the employment. At that point the authorities come in, to the effect that, although the cause of the fall was a fit, the cause of the injuries was the fall itself, and they are direct authorities that the injury in the present case was caused by an accident. Then did

the accident arise out of the man's employment? When we get rid of the confusion caused by the fact that the fall was originally caused by the fit and the confusion involved in not dissociating the injury and its actual physical cause from the more remote cause, that is to say, from the fit, the difficulty arising from the words 'out of employment' is removed."

In *Robinson* v. *State*, 93 Conn. 49, 51, 104 Atl. 491, Robinson left his work of supervising the repair of a highway and while crossing the highway diagonally in order to speak to a friend who had hailed him, he was struck and killed by a touring car. That the injury arose out of the employment was not contested before us. And we said the case differed from other cases cited in which the injury did not arise from a risk incidental to the performance of the contract of employment. In other words, that where the injury did arise from a risk incidental to the performance of the contract it might arise out of the employment. If Robinson, at the time he was hit, was engaged in his employment or something reasonably incidental to it, the risk did arise out of the employment. In *Merlino* v. *Connecticut Quarries Co.*, 93 Conn. 57, 59, 104 Atl. 396, we disposed of a like question thus: "The injury arose out of the employment, at a place within the danger zone created by the business of the employer. That being so, the only question remaining is whether it was fairly consistent with the performance of the contract of employment that Merlino should be at or about the place at or about that time."

Our question is like that in the *Merlino* case, Was Reeves, when at the doorway, engaged in his employment or in something incidental to it? If while Reeves was supervising the work of his room he had either tripped or became faint, no matter whether due to his idiopathic condition, or from something said to him,

and had fallen upon a machine in motion and suffered injury, beyond question the injury suffered would be held to arise in the course of the employment, and also out of the employment, because there was a causal connection between the employment and the injury which was a risk of the employment. If while Reeves was at work he had become faint and had gone to the doorway to get air, and had fallen through the open doorway, the accident would have arisen in the course of the employment, because his going to get air was an incident of the employment. He had not turned aside from the employment for his own purposes, he was getting himself into condition so as to be able to continue his employment. Hence there was a causal connection between the employment and the injury. In each of these instances the injury was due to the fall, and the fall to the faintness or to the tripping in a place where his employment took him, and from a risk which was one of the conditions of the employment. The risk from the open doorway was the same in each case.

In *Wicks* v. *Dowell & Co.*, L. R. (1902) 2 K. B. 225, the employment compelled the decedent to stand on the edge of the hold of the ship, hence the injury arose in the course of the employment, and the risk connected with the employment was imminent, and the causal connection between employment and injury present, hence the injury arose out of the employment. In the case at bar the decedent was not at the doorway because some of his work took him there. But that is not all. Was he there because something incidental to the employment took him there? While he engaged in a talk with his superintendent, which was unrelated to the employment, he had for the moment, ceased from his employment, not wholly, but partially, but this was not a turning from his employment for his own purposes. He was the overseer of the room and he may

have continued his work of supervision, in part, at least, while he talked. His work necessarily was not continuous and he had leisure moments in the intervals of his work. How long he talked with the superintendent does not appear. But the finding is far from justifying the conclusion or inference that he had turned away from his employment to engage in some pursuit of his own. It is an almost necessary inference of this record that this conversation was a brief one. Employees not infrequently turn from their work to talk momentarily of matters unconnected with their employment. A superintendent, or the overseer under him, not infrequently does the same thing. In industrial communities these are facts of common knowledge. Conversations of this character are incidents of the work. "An employee is not, like a part of a machine operated by him, fixed to precisely the mechanical movements he must perform in order to discharge his industrial function. He may do whatever a human being may reasonably do while in the performance of his duty without such acts placing him outside of the course of his employment." 1 Honnold on Workmen's Compensation, § 105, p. 349.

Our immediate question is whether, as matter of law, an overseer who, while in the course of his employment engages in the place of his work, for a short time, with his superintendent in a conversation unrelated to the employment, and this makes him faint, and in consequence he walks to an open doorway to get air and there meets with an accident from a risk of his employment,—has so far turned from his employment for his own purposes that the accident cannot be said to have arisen out of the employment. We think the question, upon these facts and this record, is a much plainer one than that in Robinson's case. The injury to Reeves happened at a place where an overseer might reason-

ably be, consistently with the due performance of his duties as overseer. They did not require his uninterrupted attention, nor was he stationed in any particular part of this room. Therefore, when he went to a place in the room where he might reasonably be, temporarily, in order to restore his physical condition, he cannot be said to have turned from his employment for his own purposes any more than did Robinson who left his work, temporarily, and crossed the road to chat with a friend, and was killed while on the way. *Robinson* v. *State*, 93 Conn. 49, 104 Atl. 491; *Wheelock* v. *Zevitas*, 229 Mass. 167, 118 N. E. 279; *Sundine's Case*, 218 Mass. 1, 105 N. E. 433. Such a holding is too narrow a construction of the contract of employment of this overseer. He was injured at a time when he was intent upon restoring his physical condition so that he might continue his work. But when an employee for his own purposes and not for those directly or indirectly related to or connected with the conditions of his employment ceases from his employment, though it be temporarily, and is injured through a risk connected with the employment, his injury cannot be held to have arisen out of his employment. There was then no causal connection between that and his injury. For example, employees who engage in fighting during working time are in the course of their employment, but if injury occurs it does not arise out of the employment. This is a clear departure from their work to serve exclusively their own ends. The risk was not a risk of the employment. There was no reasonable connection between the injury suffered in consequence of a voluntary fight and the employment. Neither the employment nor the conditions under which it was pursued was responsible for the injury. *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 387, 103 Atl. 115. But in the case before us the open doorway was a con-

tinuing risk under which this employment was pursued. Reeves was injured during the period of his employment, in the place of his employment, and while he was seeking to recover from the fainting condition into which his voluntary talk, unconnected with the employment, had plunged him, and this was an incident of his employment.

I agree with the commissioner and with the trial court in holding that this injury occurred in the course of Reeve's employment, but I think that the fair application of our decisions to the case in hand should lead to the conclusion that the injury arose out of the employment.

In this opinion CURTIS, J., concurred.