FRANCIS B. TAYLOR, EXECUTRIX, *vs.* ST. PAUL'S UNIVERSALIST CHURCH ET AL.

Third Judicial District, New Haven, January Term, 1929.
WHEELER, C. J., MALTBIE, HAINES, HINMAN AND BANKS, JS.

Argued January 23d—decided April 30th, 1929.

*George E. Beers* and *Irving G. Smith,* for the appellant (plaintiff).

*Thomas R. Robinson,* with whom, on the brief, was *Daniel L. O'Neill,* for the appellees (defendants).

HAINES, J.   The plaintiff's assignments of error are based in part upon the refusal of the court to add certain claimed facts to each of several paragraphs of the finding, but no claim is made that the facts found are not supported by evidence.   While some of the additions the plaintiff seeks to make to the finding are properly supported by evidence, others are inferences only, from other facts.   Most of them do not come within the classification of undisputed or admitted facts which would permit us to add them to the finding.   One exception to this is a fact which is amply supported by the evidence, with nothing in the evi-

dence to contradict it. It is testified to by all the parties who could have known anything about it, and is apparently not inconsistent with the finding as made. There is some doubt as to the real significance of the finding that $250 was paid the decedent by the Temple Tours, and we think this doubtful meaning also justifies the addition of the fact we refer to. Practice Book, p. 309, § 11 (2). It is found that the decedent in going abroad as a conductor of a party of tourists for the Temple Tours, "received for his services, his ordinary traveling and living expenses, and an allowance of $250 in cash." The evidence clearly establishes the fact that this sum of $250 was not paid by way of compensation, but was an allowance to cover incidental expenses which the trip made necessary. This fact should be added to the finding. Upon similar grounds we add paragraphs two and four of the requested finding. The uncertainty in the scope and implications of paragraph four of the finding are largely removed by the added facts.

This brings us to that portion of the appeal which refers to conclusions reached by the trier. It appears from the finding that the plaintiff's decedent was employed by the defendant Church as its minister, beginning his service in December, 1918, and continuing in that employment when the present action was instituted. The record shows that he died in May, 1928, and the plaintiff was duly admitted as a party plaintiff in behalf of his estate. The amended finding also shows that his contract of employment contemplated, and that it was understood between the decedent and the trustees of the Church, that he was to go abroad during the summer and upon his return was to deliver lectures on subjects relating to these trips. We attach little importance to the characterization of this understanding or agreement made by the finding, as a

"privilege." It may have been a privilege or a duty to go, or a privilege to go only at that time of the year, but in any event it was obviously contemplated by the trustees of the Church that the contract of employment should include the procuring of material for these lectures. It was also part of the same agreement that the decedent would not deliver any of such lectures except under the auspices of the Church, and that the proceeds of the lectures were to go into the treasury of the Church. Several trips were made before 1924 under this arrangement. It is clear that the commissioner looked upon the trip abroad as a mere personal privilege; something in the nature of a concession or gratuity, and not a part of the contract of employment, but it is difficult to see how lectures upon subjects relating to these trips could have been given, if the contract had not also provided for making the trips.

In reality the decedent was under a dual employment during the period of this trip—to the Temple Tours, and to his Church when he was engaged in procuring material for his lectures and in their preparation. When so employed upon the lectures he must be held to have been in the course of his employment for the Church. When he was engaged upon work in aid of the Temple Tours he was in the course of his employment with them.

As we interpret the decedent's contract with the Church it contemplated that the decedent would travel with the Temple Tours fulfilling his service to them, and as circumstances permitted, during this period, secure material for his lectures and work upon their preparation. Work upon his lectures was incidental to his main work as pastor of his Church.

The amended finding makes it clear that he received no compensation, as such, from the Temple Tours for

his services, but only his expenses. This service cannot be held to have in any way affected his legal relation as an employee of the Church during this period. His employment by the Church was not interrupted. He was still under salary paid by the Church, and we deem it altogether immaterial whether he obtained his passage to and from Europe by paying cash or by rendering service.

The defendants claimed that he was an employee of the Temple Tours during the entire period of the trip; but one may hold the legal relation of employee to more than one employer at the same time. Even if the decedent were held to have been an employee of the Temple Tours at the time of an injury to the decedent, it does not follow that he was not still in the employ of the defendant Church, nor that recovery could not be had from the latter for injuries arising in the course of and out of the employment by the Church in the preparation of the lectures. Bradbury's Workmen's Compensation (3d Ed.) p. 127 (14); 1 Honnold on Workmen's Compensation, p. 126, § 29; *Brandy* v. *Owners of the S.S. Raphael*, 4 Butterworth C.C. 6, affirmed, L. R. (1911) App. Cas. 413, 4 Butterworth C.C. 307.

On the established facts, it must be held that throughout the trip the decedent was in the course of his employment by the Church when he was engaged in work for these lectures, whatever his relation to the Temple Tours was.

We next consider whether the decedent's injuries arose out of his employment by the Church. In *Larke* v. *Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 309, 97 Atl. 320, it was held that an injury which occurs in the course of the employment will ordinarily arise out of the employment; but not necessarily so, for it might occur out of an act or omission for the employee's own

benefit, or the benefit of a third party and not for the benefit of the employer. "The term 'arising out of' . . . points to the origin or cause of the injury." We said in *Marchiatello* v. *Lynch Realty Co.*, 94 Conn. 260, 263, 108 Atl. 799: "An injury arises out of an employment when it occurs in the course of the employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. The injury is thus a natural or necessary consequence or incident of the employment or of the conditions under which it is carried on. Sometimes the employment will be found to directly cause the injury, but more often it arises out of the conditions incident to the employment. But in every case there must be some causal connection between the injury and the employment or the conditions under which it is required to be performed, before the injury can be found to arise out of the employment." See also *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 119, 96 Atl. 368; *Jacquemin* v. *Turner & Seymour Mfg. Co.*, 92 Conn. 382, 384, 103 Atl. 115; *Lake* v. *Bridgeport*, 102 Conn. 337, 342, 128 Atl. 782; *Tiralongo* v. *Stanley Works*, 104 Conn. 331, 333, 133 Atl. 98.

The commissioner found that on August 3d, 1924, when the party was in Rome, the decedent left the party and went on a sight-seeing trip on his own account. While thus on his way to see the statue of Victor Emanuel he was struck by an automobile and received severe injuries, including a concussion of the brain and a broken bone. All of these facts were found by the commissioner upon the testimony of the decedent who was then in life. There was nothing in the evidence which contradicted his version of his visit to see the statue of Victor Emanuel. It was upon its face undisputed. It is apparent that the commissioner

credited the testimony of the decedent. We find nothing in it which tends to indicate untrustworthiness or exaggeration. We must assume in the light of our reading of the decedent's testimony and in the light of the credit which the commissioner gave to his testimony that his failure to correct his finding by adding to the above statement the correction claimed, that "The object of this sight-seeing trip was to get material for the lectures," was a mere inadvertence. With this addition to the finding it is clear that the decedent at the time of this injury was engaged in getting material for his lectures and therefore his injury did arise in the course of his employment since it fell within the definition in *Larke* v. *Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 308, 97 Atl. 320: One's injury arose in the course of his employment if it occurred within the period of his employment, at a place where he might reasonably be, and while he was reasonably fulfilling the duties of his employment, or engaged in doing something incidental to it. Likewise the injury arose out of the employment of getting material for his lectures for the defendant employer under the definition already referred to. The decedent was again injured on his return trip upon the ocean. There is no specific finding as to what duties he was actually performing at the time of his injury on the return trip. The cause of this injury is stated in the testimony of the decedent, but since no motion to add this to the finding has been made, we cannot consider it.

Before an award for the injury can be made against the defendant Church, it is necessary to know that the decedent was engaged upon his work for the Church so that we can determine whether this injury arose out of and in the course of his employment by it.

There is error, the Superior Court is directed to sustain the appeal and remand the case to the commis-

sioner to render an award in favor of the plaintiff for the injury in Rome.

In this opinion WHEELER, C. J., and MALTBIE, J., concurred.

HINMAN, J. (dissenting). The salient facts, found by the commissioner, pertaining to the original claimant's trips abroad are: Beginning in 1910 he had, from time to time, acted as conductor for the tourist agency. When, in 1918, he entered into a contract with the respondent to become its minister it was understood that he was to have the privilege of going abroad for two months in summer, and that on his return he should deliver lectures on subjects relating to such trips, under the auspices of the respondent Church or with its permission. It appears to me that the commissioner was correct in the view attributed to him by the majority opinion, that the privilege accorded to the claimant of leaving his duties as minister for an extended period in summer and taking trips to foreign parts was "in the nature of a concession or gratuity and not a part of the contract of employment." I can see no justification for adding to the finding that these trips were taken in order to get material for lectures, or for holding that there was any contractual obligation by the claimant to the respondent to go abroad to secure such material or that, at any time during such trips, he was in the course of his employment as minister of the respondent Church. His situation appears to have been that of one enjoying a vacation from the duties of his employment, acting as tour conductor as a means of providing his traveling expenses and, like most clergymen who travel during the vacation season, later recounting his observations and experiences in public addresses.

The commissioner's finding as to the injury for which the majority direct compensation is that when the touring party was in Rome the claimant "left the party and went on a sight-seeing trip on his own account" and was injured while so occupied. Upon this finding, clearly, the injury could not be held to arise out of the claimant's employment with the respondent; this end is accomplished by adding thereto, "The object of this sight-seeing trip was to get material for the lectures." In my opinion, this fact is not admitted or undisputed within the rule (§ 11, Practice Book, p. 309) governing additions to a finding, and is inconsistent with the commissioner's finding that this particular excursion was on claimant's own account. I am also unable to regard as plausible the majority's supposition that the failure to make this addition at an earlier stage of the case was a "mere inadvertence." It was claimed in the motion to correct addressed to the commissioner, but was objected to, for reasons specified, in the respondent's reply to that motion; it was essential to the claimant's right to an award for the first injury, and it is fair to assume that it was correspondingly stressed whenever the claimed corrections were argued; yet the commissioner and two judges of the Superior Court refused to grant the correction.

The majority recognize that compensation cannot be granted for the second injury, on shipboard, because of lack of a finding as to what the claimant was doing at the time. I maintain that the finding as to the injury in Rome should stand as made by the commissioner; under this an award on account of the first injury is equally inadmissible.

In this opinion BANKS, J., concurred.