In the Matter of the Claim of HELEN E. GRIEB et al., Respondents, v. WILLIAM H. HAMMERLE and NEW AMSTERDAM CASUALTY COMPANY, Appellants.

STATE INDUSTRIAL COMMISSION, Respondent.

**Workmen's Compensation Law — affirmance of award for death of employee engaged in a service for his employer after his regular working hours.**

Where an employee, at the request of his employer and after his regular working hours, renders a service which, if it had been performed during working hours, would have been incidental to his employment, such service is part of his employment within the meaning of the Workmen's Compensation Law, and if he is killed in an accident while performing such services his widow and children are entitled to death benefits under the law (Cons. Laws, ch. 67, § 16).

Matter of Grieb v. Hammerle, 181 App. Div. 911, affirmed.

(Argued January 8, 1918; decided January 29, 1918.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered November 19, 1917, affirming an award of the state industrial commission under the Workmen's Compensation Law.

The facts, so far as material, are stated in the opinion.

A. Lee Olmsted for appellants. The decedent was not engaged in a hazardous employment at the time of his injury within the meaning of the Workmen's Compensation Law. (Newman v. Newman, 218 N. Y. 325; Glatzl v. Stumpp, 220 N. Y. 71; Devoe v. New York

*State Railways*, 169 App. Div. 472; 218 N. Y. 318; *Sickles* v. *Ballston R. S. Co.*, 171 App. Div. 108; *Brown* v. *Richmond Light & R. R. Co.*, 173 App. Div. 432; *Saenger* v. *Locke*, 220 N. Y. 556; *Pope* v. *Merritt & Chapman Derrick & Wrecking Co.*, 177 App. Div. 69; *McCabe* v. *Brooklyn Heights R. R. Co.*, 177 App. Div. 107; *Kehoe* v. *Cons. Tel. & El. Subway Co.*, 176 App. Div. 84; *Mandell* v. *Steinhard Bros.*, 173 App. Div. 515; *Manor* v. *Pennington*, 167 N. Y. Supp. 424.)

*William F. Quinn* and *Matthew R. Quinn* for respondents. The objection that the decedent was not engaged in a hazardous employment at the time of the injury within the meaning of the Workmen's Compensation Act is untenable. (*Heitz* v. *Ruppert*, 218 N. Y. 148; *Fogarty* v. *Nat'l Biscuit Co.*, 221 N. Y. 20; *Dose* v. *Moehle Lithographic Co.*, 221 N. Y. 401.)

*Merton E. Lewis*, Attorney-General (*E. C. Aiken* of counsel), for state industrial commission. The accident arose out of and in the course of the employment. (*Lowry* v. *Sheffield Coal Co., Ltd.*, 1 B. W. C. C. 3; *Molloy* v. *S. Wales Anthracite Colliery Co.*, 4 B. W. C. C. 65; *Riley* v. *W. Holland & Sons, Ltd.*, 4 B. W. C. C. 155.)

CARDOZO, J. The award is for death benefits to the widow and minor child of one Grieb, an employee (Workmen's Compensation Law [Cons. Laws, ch. 67], § 16). The employee was a cigar packer in the city of Syracuse. He was a piece worker, receiving $1.25 for packing a thousand cigars. When not busy packing, his custom was to deliver cigars to customers if so requested by his employer. He did this frequently during working hours. Sometimes he did it after working hours, and then his employer gave him car fares and the price of a drink.

On Saturday, September 30, 1916, Grieb left the

factory in the afternoon about four o'clock. In the evening, he passed by with two friends, who had been fellow-employees. They saw a light in the factory, and went upstairs. They found the employer tying up two boxes of cigars. He had called that evening at the Amos Hotel, had been asked by the proprietor to deliver some cigars, and had gone to the factory to get them. After some talk about other matters, the employer asked Grieb to deliver the boxes at the hotel, and to take the bill with him, presumably for collection. Grieb consented, and received the boxes and the bill. He left his employer and his two friends in the factory. On his way downstairs, he fell, and was killed.

The argument is made that the injury did not arise out of or in the course of the servant's employment. I think that is too narrow a view. If Grieb had been injured during working hours, it would make no difference that his service was gratuitous. If the service was incidental to the employer's business and was rendered at the employer's request, it would be part of the employment within the meaning of this statute. Any other ruling would discourage helpful loyalty (*Hartz* v. *Hartford Faience Co.*, 90 Conn. 539). In that case a shipping clerk whose duty was to keep the books, lent a hand of his own motion in the delivery of merchandise. His claim for compensation was sustained. We do not need to go so far. We cannot doubt that in the case cited the claim would have been valid if custom or special request had established the approval of the employer. To hold otherwise would lead to strange conclusions. It cannot be that an employer may ask a clerk to assist mechanics in repairing dangerous machinery, and then be heard to say that because the service was gratuitous, the employee, if injured, is outside the pale of the employment. *Pro hac vice*, by force of custom or request, the employment is enlarged (*Lane* v. *Lusty*,

1915, 3 K. B. 230; *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116). We have already held that in determining the relation of employer and employee, the payment of wages is not the sole test (*De Noyer* v. *Cavanaugh*, 221 N. Y. 273). We should hold the same thing now.

It is plain, therefore, that Grieb's service, if it had been rendered during working hours, would have been incidental to his employment. To overturn this award, it is necessary to hold that the service ceased to be incidental because rendered after hours. That will never do. The law does not insist that an employee shall work with his eye upon the clock. Services rendered in a spirit of helpful loyalty, after closing time has come, have the same protection as the services of the drone or the laggard (*Larke* v. *John Hancock M. L. Ins. Co.*, 90 Conn. 303, 308). But the argument is that because the employee had left for the day, and had then returned, his rights are different. Why he returned, we do not know. Perhaps it was idle curiosity. Perhaps the unexpected light which he saw in the factory after closing, made him feel that investigation was due in the interest of his employer. At all events, when he reached there, he found business in progress. His employer had prepared cigars for delivery, and was writing out the bill. What Grieb then undertook to do with his employer's approval was just as much a part of the business as if it had been done in the noonday sun. He was not only to deliver the cigars. He was also to collect the money. That is the plain implication of the request that he should take the bill with him. Moreover, it is a fair inference that he expected to return, and bring the money back, for he did not take his companions with him, but left them behind. How far he had to go we do not know. There is no evidence where the Amos Hotel is situated. There is nothing to show that the employee would have

passed it in going to his home.  I do not say that the case would be different if such things had been proved. It is enough to say that' they are not here.  This case is not one where the servant goes out primarily on his own business or for his personal convenience, and only incidentally and by the way does something for the master. All the circumstances point to the conclusion that Grieb left the factory on the fatal errand for the sole purpose of helping the master in the transaction of the master's business.  It was not mere friendship, it was the relation of employer and employee, that led the one to request the service and the other to render it.  If such a service is not incidental to the employment within the meaning of this statute, loyalty and helpfulness have earned a poor reward.

I do not think our law commits us to so harsh a holding. A service does not cease to be part of an employment because it is occasional or trivial.  The Master of the Rolls said in *McDonald* v. *Owners of Steamship Banana* (1908, 2 K. B. 926, 929): " If I send my domestic servant in the evening with a letter to a friend, and he is knocked down by a motor omnibus on his way to or from my friend's house," there will be liability under the English statute.  The statement, when made, was a dictum, but a recent case in the House of Lords (*Dennis* v. *White & Co.*, 1917 A. C. 479), reviewing all the precedents, and sweeping aside many fine-spun distinctions, makes it clear that the dictum was sound and just.  (See also *Hughes* v. *Bett*, 1915 S. C. 150, cited in *Dennis* v. *White & Co.*, *supra*, at p. 484.)  We should interpret and apply our own statute in the same large spirit.  I cannot doubt that if it is thus read, the claimant's case will be found within it.

To reach this conclusion, there is no need to attempt a precise or comprehensive definition of the term employment.  One must leave such problems to be worked

out by the process of exclusion and inclusion in particular cases, rather than by " a fixed standard of measurement " (*Stewart & Son* v. *Longhurst*, 1917 A. C. 249, 258). It is enough that here the employee was in the general service of the employer; that the service rendered was incidental to the business; that it was one which this employee had been accustomed to render upon request; and that the errand was the cause of his presence on the stairway. The inference is legitimate that it was not the comradeship of friends, but the tacit sanctions of a relation of power and dependence, which prompted the master's request and the servant's acquiescence.

The order should be affirmed with costs.

HISCOCK, Ch. J., CUDDEBACK, POUND, CRANE and ANDREWS, JJ., concur; COLLIN, J., not voting.

Order affirmed.