Ramón Montaner, Manager, etc., Appellant, v. Industrial Commission of Puerto Rico, Respondent; Felícita Díaz de Aldabalejo, Claimant.

No. 173.   Argued July 8, 1939.—Decided July 5, 1940.

George A. Malcolm, Attorney General (B. Fernández García, former Attorney General, on the brief), E. de Aldrey, Assistant Attorney General, and Víctor J. Vidal González, and G. Atiles Moréu, Legal Advisers of the State Insurance Fund, for appellant. M. León Parra for respondent. Francisco A. Quirós Méndez for claimant before the Commission.

Mr. Justice Hutchison delivered the opinion of the court.

An employer sent an injured employee to a State Fund dispensary in Corozal with a note. An attendant in charge of the dispensary treated a wound, gave the employee a blank form to be filled in by the employer, and told him that he would receive no further treatment unless he brought with him on his next visit the employer's formal report. The employee was killed two days later in an automobile accident while on his way to the dispensary with the employer's report in his pocket. The Industrial Commission found that the employee met his death while carrying out orders received from the Manager of the State Fund through the attendant

in charge of the dispensary, and from his employer. The commission held that the employee was entitled to compensation.

Of the cases cited by petitioner and by the commission the most helpful are: *Hammond* v. *Keim*, (Neb.) 258 N.W. 478; *Marks' Dependents* v. *Gray*, (N.Y.) 167 N.E. 181, and *Grieb* v. *Hammerle*, (N.Y.) 118 N.E. 805. In *Hammond* v. *Keim* the headnotes by the court read as follows:

"1. When an employee abandons his job and takes another, and while going to get his tools from the old job is killed, recovery cannot be had from his former employer under the Workmen's Compensation Act, where such employer had no duty or obligation in connection with the return of such tools.

"2. If the employee's private business creates the necessity for a trip which would not have been undertaken otherwise, injury occurring on such trip is not compensable, even though at the time he was doing an errand for his former employer, such fact being but incidental to, and not the primary purpose of, the trip."

The court in its opinion said:

"In the case at bar, the deceased had entered upon a new job energetically, and was engaged in a trip to get his tools for that purpose. The mere fact that, through a combination of circumstances, he happened to have some acid belonging to his former employer in the truck at the time of the accident does not reestablish the former relationship between them. Deceased would not have made the trip if someone else had brought his tools to University Place, but he would have made the trip just the same if the acid had not been placed in his truck. The primary purpose of his trip was to bring the tools of the deceased, in which his former employer had no interest."

The headnotes in *Marks' Dependents* v. *Gray*, follow:

"Death of plumber's helper in collision on highway, while making journey in his own automobile at end of day's work to call for his wife, *held* not result of an accident 'arising out of and in the course of employment' within Workmen's Compensation Law, §2, subd. 7, and section 10 (Consol. Laws, c. 67), notwithstanding he had been requested by his employer to takes his tools and perform a job calling for fifteen or twenty minutes of work on arriving at his destination.

"If work of employee creates necessity for travel, he is in 'course of his employment' while so traveling, though he is serving at same time some purpose of his own, but, if work has no part in creating necessity for travel, and the journey would have gone forward though the business errand had been dropped and would have been canceled on failure of private purpose though business errand was undone, the travel as well as the risk is then personal."

The opinion by Mr. Chief Justice Cardozo, omitting the first and final paragraphs, follows:

"(1) Marks was a helper in the service of a plumber. His home and his place of business were at Clifton Springs, N. Y. On April 16, 1927, his wife went to visit relatives at Shortsville, where her husband promised to call for her in the family car at the end of the day's work. The employer, hearing that he was to make this journey, asked him to take his tools and fix some faucets that were out of order at a dwelling house in Shortsville. The job was a trifling one, calling for fifteen or twenty minutes of work. There would have been no profit in doing it at the costs of a special trip. It would have been postponed till some other time when it could have been combined with other work, if Marks had not stated that he would make the trip anyhow. He did not use the employer's truck, the vehicle set apart for travel in the course of business. He used his own or his father's car, set aside, it would seem, for the convenience of the family. Nothing was said by the employer about paying him for the job. The expectation was, however, that, for any work that he did, he would be paid at the usual rate for labor after working hours. On the way to Shortsville, when only about a mile from Clifton Springs, he was injured in a wreck and died.

"We think the accident did not arise 'out of and in the course of' any service that Marks had been employed to render. He was not making the journey to Shortsville at the request of his employer or for the purpose of doing his employer's work. He was making it in fulfillment of a promise to call for his wife at the end of the day, and bring her home in the family car. If word had come to him before starting that the defective faucets were in order, he would have made the journey just the same. If word had come, on the other hand, that his wife had already returned, he would not have made the trip at all. The employment did not bring him on the journey or expose him to its risks. If that is so, it is not 'out of the employment' that the injuries arose.

"Many cases there are in which the perils of travel on a highway are so related to the employment as to lay the basis for an award. 'Street risks' are so varied as to defy enumeration or prediction. The result at times has been that accidents the most bizarre have been held to be incidental to service in the line of duty. *Katz* v. *A. Kadans & Co.*, 232 N. Y. 420, 134 N. E. 330, 23 A.L.R. 401; *Roberts* v. *J. F. Newcomb & Co.*, 234 N. Y. 553, 138 N. E. 443. We have no thought to detract from these decisions or to whittle down by exceptions the principle beneath them. They do not touch the case at hand. Unquestionably injury through collision is a risk of travel on a highway. What concerns us here is whether the risks of travel are also risks of the employment. In that view, the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils. A servant in New York informs his master that he is going to spend a holiday in Philadelphia, or perhaps at a distant place, at San Francisco or at Paris. The master asks him while he is there to visit a delinquent debtor and demand payment of a debt. The trip to Philadelphia, the journey to San Francisco or to Paris, is not a part of the employment. A different question would arise if performance of the service were to occasion a detour, and in the course of such detour the injuries were suffered. So here a different question would arise if Marks, after making the trip to Shortsville, had met with some accident while repairing the defective faucets. *Grieb* v. *Hammerle*, 22 N. Y. 382, 118 N. E. 805, 7 A.L.R. 1075. The collision occurred while he was still upon the highway, a mile or less from home.

"(2) In such circumstances we think the perils of the highway were unrelated to the service. We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause. To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled. We cannot draw that inference from the record now before us. On the contrary, the evidence is that a special trip would have been refused since the pay would be inadequate. The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. *Clawson* v. *Pierce-Arrow Motor Car Co.*, 231 N. Y. 273, 131 N. E. 914. If, however, the work has had not part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the

private purpose, though the business errand was undone, the travel is then personal, and personal the risk.

"Applying this test, we hold that Marks was not placed upon the highway by force of any duty owing to his employer, and that the risk of travel was his own."

Pound and Hubbs, Justices, dissented. There was no dissenting opinion.

The syllabus to *Grieb* v. *Hammerle,* reads:

"A cigar packer, who frequently delivered cigars to customers if so requested by his employer, on passing the factory in the evening, saw a light and went upstairs. He and two friends found his employer tying up two boxes of cigars. The employer requested deceased to deliver the cigars and take the bill with him. On his way downstairs he fell and was killed. It appeared that deceased left his friends in the factory when he started to make the delivery. *Held,* that he was at that time acting within the scope of his employment, and hence an award for his death might be made under the Workmen's Compensation Law (Consol. Laws, c. 67); the fact that deceased was rendering services after ordinary hours at the request of his employer not removing him from the protection of the law."

From the opinion by Mr. Justice Cardozo, we take the following excerpt:

"The argument is made that the injury did not arise out of or in the course of the servant's employment. I think that is too narrow a view. If Grieb had been injured during working hours, it would make no difference that his service was gratuitous. If the service was incidental to the employer's business and was rendered at the employer's request, it would be part of the employment within the meaning of this statute. Any other ruling would discourage helpful loyalty. *Hartz* v. *Hartford Faieance Co.,* 90 Conn. 539, 97 Atl. 1020. In that case a shipping clerk, whose duty was to keep the books, lent a hand of his own motion in the delivery of merchandise. His claim for compensation was sustained. We do not need to go so far. We cannot doubt that in the case cited the claim would have been valid if custom or special request had established the approval of the employer. To hold otherwise would lead to strange conclusions. It cannot be that an employer may ask a clerk to assist mechanics in repairing dangerous machinery, and then be heard to say that because the service was gratuitous, the employé, if injured, is outside the pale

of the employment. Pro hac vice, by force of custom or request, the employment is enlarged. *Lane* v. *Lusty*, (1915) 2 K. B. 230; *Mann* v. *Glastonbury Knitting Co.*, 90 Conn. 116, 96 Atl. 368, L.R.A. 1916 D, 86. We have already held that in determining the relation of employer and employé, the payment of wages is not the sole test. *De Noyer* v. *Cavanaugh*, 221 N. Y. 273, 116 N. E. 992. We should hold the same thing now.

"It is plain, therefore, that Grieb's service, if it had been rendered during working hours, would have been incidental to his employment. To overturn this award, it is necessary to hold that the service ceased to be incidental because rendered after hours. That will never do. The law does not insist that an employé shall work with his eye upon the clock. Services rendered in a spirit of helpful loyalty, after closing time has come, have the same protection as the services of the drone or the laggard. *Larke* v. *John Hancock Co.*, 90 Conn. 303, 308, 97 Atl. 320, L.R.A. 1916 E, 584. But the argument is that because the employé had left for the day, and had then returned, his rights are different. Why he returned, we do not know. Perhaps it was idle curiosity. Perhaps the unexpected light which he saw in the factory after closing made him feel that investigation was due in the interest of his employer. At all events, when reached there, he found business in progress. His employer had prepared cigars for delivery, and was writing out the bill. What Grieb then undertook to do with his employer's approval was just as much a part of the business as if it had been done in the noonday sun. He was not only to deliver the cigars. He was also to collect the money. That is the plain implication of the request that he should take the bill with him. Moreover, it is a fair inference that he expected to return, and bring the money back, for he did not take his companions with him, but left them behind. How far he had to go we do not know. There is no evidence where the Amos Hotel is situated. There is nothing to show that the employé would have passed it in going to his home. I do not say that the case would be different if such things had been proved. It is enough to say that they are not here. This case is not one where the servant goes out primarily on his own business or for his personal convenience, and only incidentally and by the way does something for the master. All the circumstances point to the conclusion that Grieb left the factory on the fatal errand for the sole purpose of helping the master in the transaction of the master's business. It was not mere friendship, it was the relation of employer and employé, that led the one to request the service and the other to render it. If such a service is not incidental to the employment

within the meaning of this statute, loyalty and helpfulness have earned a poor reward.

"I do not think our law commits us to so harsh a holding. A service does not cease to be part of an employment because it is occasional or trivial. The Master of the Rolls said in *McDonald* v. *Owners of Steamship Banana* (1908) 2 K. B. 926, 929:

" 'If I send my domestic servant in the evening with a letter to a friend, and he is knocked down by a motor omnibus on his way to or from my friend's house,' there will be a liability under the English Statute.

"The statement, when made, was a dictum, but a recent case in the House of Lords (*Dennis* v. *White & Co.* (1917) A. C. 479), reviewing all the precedents, and sweeping aside many finespun distinctions, makes it clear that the dictum was sound and just. See, also, *Hughes* v. *Batt* (1915) S. C. 150, cited in *Dennis* v. *White & Co., supra,* at page 484. We should interpret and apply our own statute in the same large spirit. I cannot doubt that, if it is thus read, the claimant's case will be found within it.

" To reach this conclusion, there is no need to attempt a precise or comprehensive definition of the term employment. One must leave such problems to be worked out by the process of exclusion and inclusion in particular cases, rather than by 'a fixed standard of measurement.' *Stewart & Son* v. *Longhurst* (1917) A. C. 249, 258. It is enough that here the employé was in the general service of the employer; that the service rendered was incidental to the business; that it was one which this employé had been accustomed to render upon request; and that the errand was the cause of his presence on the stairway. The inference is legitimate that it was not the comradeship of friends, but the tacit sanctions of a relation of power and dependence, which prompted the master's request and the servant's acquiescence."

The case at bar is a border case. But for the fact that the injured employee had been told he would receive no further treatment unless he brought with him on his second visit his employer's report, it would be easy enough to say —viewing the matter from the standpoint of the employee— that the "primary purpose" of the second trip was to obtain further treatment and that the employee "only incidentally and by the way" was doing "something for the master." None of the decided cases have held that—where the per-

formance of a service for the master is a condition precedent to the accomplishment of an employee's "primary purpose" in assuming the risk of travel—an accident on the highway does not arise out of the course of employment. We are not prepared to say that, in the circumstances of the instant case, the employee's ultimate objective in making the trip or the thought uppermost in his mind at the time of his errand as the "primary purpose" thereof is the sole test or the controlling factor in determining the right of his widow to compensation. Perhaps it would not be too much to say —still taking into consideration only the mental attitude of the employee and putting out of view the employer's interest in the errand—the "primary purpose" of that errand was the delivery of the employer's formal report as an indispensable prerequisite to further treatment. In any event, the direct interest of the employer in the delivery of his formal report has some bearing on this question of "primary purpose" and should not be overlooked.

Section 13 of the Workmen's Accident Compensation Act reads in part as follows: (Laws of P. R., 1935, pp. 250, 290)—

"Every employer shall keep a record of all injuries whether serious or slight, received by his workmen or employees in the course of their employment, or of such diseases as are covered by law. Within five days after an accident occurs, the employer shall file a written report with the Manager of the State Fund on blanks furnished by him. Said report shall state the name and the nature of the occupation of the workman or employee, the wages earned by him, the location of the establishment, and the name, age, sex and occupation of the injured workman or employee; it shall state the date and hour of any accident causing the injury, the nature and cause of the injury, and any other information required.

"Employers refusing or neglecting to make the reports required by this section shall be punished by the municipal court of the residence of the employer, by a fine which shall not exceed one hundred (100) dollars."

In the instant case the injured employee started on his second trip the third day after the first accident. If the

employer had not made his report at that time or within two days thereafter, he would have been guilty of a misdemeanor. From his point of view, at least, the "primary purpose" of the errand was the delivery of his formal report. We have no reason to believe that the injured employee would not have been sent on the errand even if—for want of confidence in the attendant *(practicante)* in charge of the dispensary or for any other reason—he had abandoned his intention of returning for further treatment. On both occasions he was sent by his employer,—on the first with an informal note, and on the second with his employer's formal report of the accident. The employer, when asked why the employee went to Corozal, answered: "To carry the employer's report and to receive treatment." We find in the record no satisfactory basis for a reversal of the Industrial Commission's ruling upon the theory that the "primary purpose" of the trip was to receive further treatment rather than to deliver the employer's report.

This is perhaps a border case in another respect. The employee was cutting cane shortly before 4 o'clock on a Friday afternoon when his foot slipped and came in contact with the sharp point of a cane stump or some other object. An incisive wound or puncture in the sole of his foot was the result. On Saturday morning his employer sent him to Corozal with a note to the attendant in charge of the dispensary. He arrived in Corozal late in the forenoon and returned to his home in the afternoon. On Monday morning his employer sent him again to Corozal with a formal report of the accident. The inference is that if he had not met his death on Monday morning, he would have returned to work within a few days or whenever the condition of his foot permitted. He had been cutting cane some twelve days, but his employment had extended over a period of some six months prior to the date of the accident. He was not only an employee but purchased all of his supplies from his employer. Technically, perhaps—and temporarily, at least—

he was not employed as a laborer in the cane field after the day of the accident. On the next day, Saturday, and on the Monday following, however,, he was employed in another capacity, just as he had been employed in other capacities prior to the time when he began to work in the cane field. He was still in the general service of his employer. The service rendered was incidental to the business. "It was not mere friendship, it was the relation of employer and employee, that led the one to request the service and the other to render it. . . . The inference is legitimate that it was not the comradeship of friends, but the tacit sanctions of a relation of power and dependence, which prompted the master's request and the servant's acquiescence." *Grieb* v. *Hammerle, supra.*

The ruling of the Industrial Commission will be affirmed.