■ CHRISTOPHER C. SMITH, Appellant, v ROMAN CATHOLIC DIOCESE OF SYRACUSE, Respondent. (Action No. 1.) CHRISTOPHER C. SMITH, Appellant, v SETON CATHOLIC CENTRAL HIGH SCHOOL, Also Known as and/or as Successor to CATHOLIC CENTRAL HIGH SCHOOL, Respondent. (Action No. 2.) [677 NYS2d 183] —Spain, J. Appeal from an order of the Supreme Court (Monserrate, J.), entered May 12, 1997 in Broome County, which granted defendants' motion for summary judgment dismissing the complaints in both actions.

In 1988, plaintiff submitted a claim for workers' compensation for injuries he sustained when he fell from a ladder while painting a wall in the library of defendant Seton Catholic Central High School (hereinafter Seton) in the City of Binghamton, Broome County. On his claim for compensation, plaintiff identified his employer as the Catholic Schools of Broome County (hereinafter CSBC) and he received workers' compensation benefits. In 1991, based on the same incident, plaintiff commenced action No. 1 against defendant Roman Catholic Diocese of Syracuse (hereinafter the Diocese) alleging a violation of Labor Law § 240. Plaintiff also commenced action No. 2, based on the same incident, against Seton alleging, *inter alia*, violations of Labor Law §§ 200 and 240. The Diocese and Seton both answered and asserted, *inter alia*, an affirmative defense based upon plaintiff's exclusive remedy under the Workers' Compensation Law. Discovery was conducted and defendants moved for summary judgment in both actions based, *inter alia*, on the aforementioned affirmative defense. Plaintiff opposed the motion. Supreme Court determined that defendants had submitted ample evidence to support the conclusion that "Seton is owned by the Diocese and operated by the Diocese through its administrative arm, CSBC" and that "the exclusivity of [w]orkers' [c]ompensation precludes plaintiff's tort action against 'both' defendants". Plaintiff appeals.

We affirm. At the outset it is clear that Supreme Court erred when it attributed to plaintiff the burden of pleading and proving that defendants were not entitled to a defense under Workers' Compensation Law § 11. It is well established that "[t]he defendant has the burden of establishing the defense of workers' compensation by a preponderance of the credible evidence" (*Williams v Forbes*, 175 AD2d 125, 126; *see, Donatin v Sea Crest Trading Co.*, 181 AD2d 654, 655; *Buchner v Pines Hotel*,

87 AD2d 691, 692, *affd* 58 NY2d 1019). However, despite this error, we nonetheless conclude that reversal is not warranted, as we may exercise our discretion and decide the motion upon the record before us (*cf., Jandreau v La Vigne*, 170 AD2d 861, 862).

The issue herein distills to whether CSBC and Seton functioned as administrative divisions of the Diocese. Our review of the record indicates that the Diocese was established as a legal corporation by the Legislature in 1968 and that certain components of the Diocese, including CSBC, have no separate legal status apart from the Diocese, but simply constitute "arms" or "branches" of the Diocese itself, even though they may have their own offices, staffs, budgets, bank accounts and/or rules of operation.

Diocesan schools, including Seton, were originally financed and run by parishes; however, they increasingly came under the control of the Diocese as enrollment and economic pressures compelled the consolidation of schools. In or about 1972, the Diocese created CSBC to permit involvement in the operation of area schools by the parents, priests and other individuals most familiar with them, but subject to the ultimate control and authority of the Diocese. CSBC has its own staff and the CSBC board has its own constitution and bylaws, but, significantly, it is still subject to the ultimate authority of the Diocese. The Diocese subsidizes the schools and retains ultimate control over CSBC's budget, including the authority to approve indebtedness, tuition and fundraising plans. The Diocesan self-insurance plan and the Diocesan Pooling Fund are indicative of the centralization of liabilities and assets for the offices, schools and agencies of the Diocese. Seton does not pay rent for use of the Diocesan property on which it operates. Notably, the Area Superintendent for the CSBC's Southern Region and the principal of Seton submitted affidavits in support of defendants' motion wherein they both state that the Diocese retained ultimate decision-making authority and financial responsibility over their institutions.

"[A] parent corporation may be deemed to be the employer of an employee of a subsidiary corporation for Workers' Compensation purposes if the subsidiary functions merely as the alter ego of the parent" (*Allen v Oberdorfer Foundries*, 192 AD2d 1077, 1078); however, "[t]he parent corporation must exercise complete domination and control of the subsidiary's everyday operations" (*id.*, at 1078; *compare, Wernig v Parents & Bros. Two*, 195 AD2d 944; *Matter of Rosenbaum v Lichtenstein*, 168 AD2d 873; *Matter of Valverde v New York City Dept. of Hous.*

*Preservation & Dev.*, 154 AD2d 756, *lv dismissed* 77 NY2d 833). Upon review of the record, we conclude that defendants presented ample credible evidence to support the conclusion that the Diocese had complete control over CSBC and Seton, thereby establishing their defense under Workers' Compensation Law § 11 (*see, Pappas v Greek Archdiocese*, 178 AD2d 104; *cf., Buchner v Pines Hotel, supra*). In our view, plaintiff's submissions and assertions in opposition to defendants' motion, each of which has been adequately rebutted by defendants' responses, are insufficient to overcome defendants' entitlement to summary judgment.

In view of the foregoing, it is not necessary to address plaintiff's remaining contentions.

Cardona, P. J., Crew III, Yesawich Jr. and Graffeo, JJ., concur. Ordered that the order is affirmed, without costs.