Patricia **GREENE–WOTTON, Individually, and on behalf of the estate of the minor children, and heirs of Rodney James Wotton, Deceased, Plaintiff,**

v.

**FIDUCIARY TRUST COMPANY INTERNATIONAL, Franklin Templeton Investments, Huntleigh USA Corporation and United Air Lines, Inc., Defendants.**

No. 02 CIV. 7245(AKH).

United States District Court, S.D. New York.

May 16, 2003.

Michael E. Elsner, Ness, Motley, P.A., Mount Pleasant, SC, for Plaintiff.

Edward J. McMurrer, Mendes & Mount, L.L.P., Jeffrey J. Ellis, Quirk And Bakalor, P.C., New York, NY, for Defendants.

***ORDER GRANTING MOTION BY FIDUCIARY TRUST COMPANY INTERNATIONAL AND FRANKLIN TEMPLETON INVESTMENTS TO DISMISS THE FIRST AMENDED COMPLAINT AGAINST THEM, AND PARTIALLY GRANTING AND PARTIALLY DENYING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT***

HELLERSTEIN, District Judge.

Two of the defendants in this action, Fiduciary Trust Company International ("Fiduciary Trust") and Franklin Templeton Investments ("Franklin Templeton"), move to dismiss all claims brought against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff opposes the motion and cross-moves to

amend her complaint for the second time. Because I find that plaintiff does not state a claim upon which relief can be granted in either her first amended complaint or her proposed second amended complaint, and fails to show that she can allege a legally sufficient claim for relief, I hereby grant defendants' motion.

## I. Background

Patricia Greene–Wotton brings this action as the spouse and administrator of the estate of Rodney James Wotton, who died in Tower Two of the World Trade Center on September 11, 2001. The Wotton family lives in New Jersey.

Prior to August 2001, Rodney Wotton worked as Vice President and Infrastructure Manager for Fiduciary Trust, an entity headquartered and incorporated in California and New York. In August 2001, Fiduciary Trust was acquired by Franklin Templeton, a California corporation, and Mr. Wotton was transferred to a new position as Web Services Manager.[1] Franklin Templeton and/or Fiduciary Trust maintained offices on the 97th floor of Tower Two.

The plaintiff brings three causes of action against defendants Franklin Templeton and Fiduciary Trust in the proposed second amended complaint.[2] Count One alleges that the defendants were negligent by failing to permit the evacuation of Tower Two and trying to conduct disaster recovery of data from Tower Two on September 11, 2001. Count Four charges Fiduciary Trust and Franklin Templeton with intentionally inflicting emotional distress on Patricia Greene–Wotton. Count Five seeks recovery for wrongful death based on the other counts of the complaint.[3]

According to the proposed amended complaint, as Mr. Wotton and other employees prepared to evacuate Tower Two after American Airlines flight 11 hit Tower One on the morning of September 11, 2001, Mr. Wotton was asked by his employer, "Franklin Templeton/Fiduciary Trust," to remain in order to conduct disaster recovery of computer data. Mr. Wotton complied with the request even though his new position, plaintiff claims, no longer required him to do disaster recovery, and the company's manual stated that disaster recovery was to be conducted off-site. After Tower Two was struck by United Airlines flight 175, Mr. Wotton called his wife and told her that he would not be able to get out.

With respect to her claim for intentional infliction of emotional distress, the plaintiff alleges that following the collapse of Tower Two, a representative of Franklin Templeton and Fiduciary Trust called the plaintiff and informed her that her husband was among those "accounted for" as having escaped. A website maintained by the defendants listed Mr. Wotton as among the survivors. Several days after the initial call, a representative called again and informed her that there had been a mis-

---

**1.** This change in employer is the primary difference between the proposed second amended complaint and the first amended complaint. Plaintiff proposes to allege that Franklin Templeton, not Fiduciary Trust, was her husband's employer.

**2.** The plaintiff's proposed second amended complaint omits two claims contained in her first amended complaint: her claim against the defendants for negligent infliction of emo-

tional distress and her "survival" action. The two claims, even if realleged, would have no more merit than the claims included in the proposed amended complaint, as discussed below.

**3.** Counts Two and Three are brought against United Airlines, Inc. and Huntleigh USA Corporation and are not at issue in this motion to dismiss.

take, and that Mr. Wotton was missing. Plaintiff also alleges that, sometime after the attacks, the defendants notified the plaintiff by mail that her health insurance coverage would be discontinued as of November 1, 2001. The defendants subsequently notified her that coverage would be extended, which was followed by another notice of discontinuance and yet another extension. And lastly, the plaintiff alleges that defendants inflicted emotional distress by repeatedly denying that they asked her husband to stay after the attack on Tower One. The plaintiff's emotional distress and the impact of the defendants' actions were compounded by the birth of her son, Rodney P. Wotton, on September 19, 2001 and his serious medical problems.

## II. Discussion

A Rule 12(b)(6) motion requires the court to determine whether plaintiff has stated a legally sufficient claim. A motion to dismiss under Rule 12(b)(6) may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991). The court's function is "not to assay the weight of the evidence which might be offered in support" of the complaint, but "merely to assess the legal feasibility" of the complaint. *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980). In evaluating whether plaintiff could ultimately prevail, the court must take the facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994). In the analysis that follows, I accept as true the factual allegations contained in the proposed second amended complaint.

### A. Negligence Claim

Defendants argue that the plaintiff's negligence claim is barred by the workers' compensation law, whether derived from New York or California law. The plaintiff responds that California law would not prohibit plaintiff's claim, because the suit arises from a risk not reasonably encompassed within the compensation bargain.

■ In deciding whether the substantive laws of New York or California apply to this case, I draw on New York choice of law principles. Section 408(b)(2) of the Air Transportation Safety and System Stabilization Act of 2001, 49 U.S.C. § 40101 (2003), provides that, for any claim resulting from or relating to the terrorist-related aircraft crashes of September 11, 2001, the substantive law "shall be derived from the law, including choice of law principles, of the state where the crash occurred." Accordingly, New York choice of law applies.

■ New York follows an "interest analysis," which examines which jurisdiction has the greatest interest in resolving the particular issue at stake. *Schultz v. Boy Scouts*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679, 683–84 (N.Y.1985). The New York Court of Appeals has further refined the conflicts inquiry in tort cases by distinguishing between "laws that regulate primary conduct (such as standards of care) and those that allocate losses after the tort occurs (such as vicarious liability rules)." *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 595 N.Y.S.2d 919, 612 N.E.2d 277, 280 (1993). The provision in the workers' compensation law barring employer liability for work-related injuries or deaths is a loss-allocating rule, for it allocates losses between competing compensation schemes and does not govern duties owed by employers. *See Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64,

286 N.E.2d 454 (1972); *Cooney,* 595 N.Y.S.2d 919, 612 N.E.2d at 282 (characterizing rules that govern whether an employee may seek contribution from a third party when the workers' compensation law bars the employee from suing the employer as loss-allocating).

■ *Neumeier* sets forth three rules to be applied in tort cases where the applicability of a jurisdiction's loss-allocating rule is in question. First, when the parties share the same domicile, the law of that domicile applies. *See Neumeier,* 335 N.Y.S.2d 64, 286 N.E.2d at 457. The domiciliary jurisdiction has the greatest interest in enforcing its rule over parties who have submitted to its authority and the risk of forum shopping is reduced. *See Schultz,* 491 N.Y.S.2d 90, 480 N.E.2d at 686–87. This rule does not apply here because the plaintiff does not share the same domicile with either of the defendants. She lives in New Jersey, while Fiduciary Trust is a California corporation and Franklin Templeton is incorporated and headquartered in California and New York.

■ The second *Neumeier* rule then provides that if the parties have different domiciles, and if the injury occurred in the state of domicile of one of the parties, the law of the place of the tort will apply if it favors the party who is its domiciliary. *See Neumeier,* 335 N.Y.S.2d 64, 286 N.E.2d at 457–58. If Franklin Templeton is domiciled in New York, this rule would require the application of the law of New York, the place of the tort. New York workers' compensation law immunizes the employer from litigation, thus compelling the dismissal of this action against a New York employer such as Franklin Templeton. However, because the plaintiff has stated merely that Franklin Templeton is "incorporated and headquartered in California and New York," and has not alleged

its principal place of business, I will, for the purposes of this 12(b)(6) motion, consider it as a California domiciliary.

■ The third *Neumeier* rule applies in all other situations. When parties are domiciled in different jurisdictions with conflicting loss-distribution rules and the locus of the tort is New York, a separate jurisdiction, "the law of the place of the tort will apply, unless displacing it 'will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants.'" *Schultz,* 491 N.Y.S.2d 90, 480 N.E.2d at 687 (quoting *Neumeier,* 335 N.Y.S.2d 64, 286 N.E.2d at 458). Applying New York workers' compensation law would not impair the smooth working of the multi-state system and would further the expectations of the parties because Mr. Wotton worked in the defendants' employ in New York. California has a minor interest in the application of its workers' compensation law with respect to a civil action brought by a New Jersey plaintiff against California companies for an injury in New York, arising out of work done in an employment relationship formed and sustained in New York. New York has a strong interest in seeing the implementation of its workers' compensation laws for work done within its borders, especially because Mr. Wotton is presumably eligible to receive benefits under New York workers' compensation laws. *Cf. Roach v. McGuire & Bennett, Inc.,* 146 A.D.2d 89, 539 N.Y.S.2d 138, 140 (N.Y.App.Div.1989) (holding that Pennsylvania workers' compensation law applied, even though plaintiff and defendant general contractors were domiciled in New York, because injury took place in Pennsylvania, subcontractor was a Pennsylvania corporation, and plaintiff was eligible for Pennsylvania workers' compensation bene-

fits).[4] I hold that New York workers' compensation laws should apply to the plaintiff's claims against Fiduciary Trust and Franklin Templeton.

■ New York workers' compensation laws provide the exclusive remedy for employees' injuries caused by employers' negligence that arise out of and in the course of employment. *See* N.Y. Workers' Comp. Law §§ 10, 11, 29(6) (2003). The liability of an employer under workers' compensation "shall be exclusive and in place of any other liability whatsoever, to such employee, his personal representatives, spouse, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death," so long as the employer has paid into the workers' compensation system. N.Y. Workers' Comp. Law § 11 (2003). The workers' compensation exclusivity provision applies to those employers, and their agents, that exercise supervision and control over an employee. *See Smith v. Roman Catholic Diocese,* 252 A.D.2d 805, 677 N.Y.S.2d 183, 185 (N.Y.App.Div.1998). Accordingly, the exclusivity provision would apply to both Fiduciary Trust and Franklin Templeton, because they both appear to be sued for the same conduct and Fiduciary Trust is alleged to be the agent of Franklin Templeton.

■ Workers' compensation can cover injuries arising from services rendered outside of what would be considered part of an employee's duties. "If the service was incidental to the employer's business and was rendered at the employer's request, it would be part of the employment within the meaning of [the workers' compensation law]." *Grieb v. Hammerle,* 222 N.Y. 382, 118 N.E. 805, 806 (1918) (services rendered outside of usual working hours). *See also Davis v. Alpha Apple Inc.,* 184 A.D.2d 893, 585 N.Y.S.2d 550, 551 (N.Y.App.Div.1992) (workers' compensation covered decedent's claim for recovery where errand was performed at supervisor's direction and not for employee's own personal gain). Claims asserting that an employer negligently failed to follow its own policies are also precluded, regardless of the extent of injuries that result from the alleged injuries. *Maas v. Cornell Univ.,* 253 A.D.2d 1, 683 N.Y.S.2d 634 (N.Y.App.Div.1999), *aff'd,* 94 N.Y.2d 87, 699 N.Y.S.2d 716, 721 N.E.2d 966 (1999). Thus, even if the defendants requested Mr. Wotton to perform duties outside of his job description and in violation of their own policies, their negligence in doing so still arose out of and in the course of employment because Mr. Wotton was providing services at the employers' request and for their benefit. Thus, Count One must be dismissed.

■ The wrongful death claim in Count Five must also be dismissed to the extent that it is derived from Count One. Wrongful death claims based on negligence against a decedent's employer are also barred under the workers' compensation law. *Frick v. Horton,* 15 N.Y.2d 1018, 260 N.Y.S.2d 26, 207 N.E.2d 618 (1965).

I also note that New York and California laws do not seem to conflict as to the scope of exclusivity that would apply in this case. Plaintiff cites several California cases for the proposition that workers' compensation exclusivity does not apply when a suit does not arise from a risk reasonably encompassed within the com-

---

4. The New York legislature amended the Workers' Compensation Law to make clear that victims of the September 11, 2001 attacks could obtain full workers' compensation without any lien or set off for additional amounts received from the federal Victim Compensation Fund. *See* N.Y. Workers' Comp. Law § 29(1)-b (2003).

pensation bargain. *See, e.g., Shoemaker v. Myers,* 52 Cal.3d 1, 276 Cal.Rptr. 303, 801 P.2d 1054, 1063 (1990).

However, all of these cases can be distinguished. In *Shoemaker,* the court held that plaintiff could sue his employer for physical injuries that resulted from his employer's retaliation against him for whistleblowing. *Id.* at 1066–67. The court noted that the specific statute authorizing civil actions for retaliation against whistleblowers was a specific statutory exception to workers' compensation, *id.;* such a statutory exception does not exist in this case. *Vacanti v. State Comp. Ins. Fund,* 24 Cal.4th 800, 102 Cal.Rptr.2d 562, 14 P.3d 234 (2001), is also inapposite. There, medical groups suing insurance companies which had failed to pay for services rendered under workers' compensation were allowed to pursue their RICO and Cartwright Act claims, because they implicated fundamental public policies outside of workers' compensation, involved conduct by the insurers that was not a normal part of the claims process, and were not covered by the workers' compensation regulatory process. *See id.* at 253–54. The two other cases relied upon by the plaintiff, *Fermino v. Fedco, Inc.,* 7 Cal.4th 701, 30 Cal.Rptr.2d 18, 872 P.2d 559 (1994), and *City of Moorpark v. Superior Court,* 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752 (1998), involved claims for intentional false imprisonment and intentional violation of California Fair Employment and Housing Act based on disability discrimination, respectively. These two cases found exceptions to workers' compensation exclusivity based on alleged *intentional* misconduct by the employer, which is not the case here.

Moreover, the defendants' action here can be viewed as conduct "of the kind that is within the compensation bargain." *Fermino,* 30 Cal.Rptr.2d 18, 872 P.2d at 568. *Vacanti* teaches that where the employer's acts are "a normal part of the employment relationship" or the workers' compensation claims process, the cause of action is subject to exclusivity. 102 Cal.Rptr.2d 562, 14 P.3d at 250 (citations omitted). Asking an employee to stay in order to do data recovery is normal employer action, even when this request allegedly is contrary to the employer's own policies or is outside the scope of employee's duties. *See Eckis v. Sea World Corp.,* 64 Cal.App.3d 1, 7, 134 Cal.Rptr. 183 (1976) (precluding civil action by a secretary who was injured when she complied with her employer's request to ride "Shamu," the killer whale, for a publicity photograph).

Because workers' compensation benefits provide the exclusive remedy for any alleged negligence by Fiduciary Trust and Franklin Templeton, Count One and Count Five, to the extent that it is based on Count One, must be dismissed.[5]

**B. Claim for Intentional Infliction of Emotional Distress**

The plaintiff bases her claim for intentional infliction of emotional distress on the following acts by the defendants. First, the plaintiff was told that her husband was alive by a representative of the defendants, and his name appeared on defendants' website as a survivor. Second, the defendants told the plaintiff that her health insurance would be cut off on October 31, 2001, and that she would have to pay for it herself through COBRA. However, plaintiff's coverage was then extended. She was again told that it would be cut off, only

**5.** The defendants also argue that they owed no duty to Mr. Wotton to protect him against the terrorist attacks. Because I find that the negligence claim is barred by workers' compensation, I need not reach that argument here.

to find out that the defendants extended it again. She claims that this back-and-forth regarding the extension of her insurance coverage was emotionally distressing. Lastly, she alleges that defendants knew or should have known that their denials that they asked her husband to remain in the World Trade Center would inflict additional emotional trauma.

▮ Intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress. *Howell v. New York Post Co.*, 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993). The last three elements are generally questions of fact, and are sufficiently alleged in the proposed amended complaint. "In practice, courts have tended to focus on the outrageousness element, the one most susceptible to determination as a matter of law." *Id.*

▮ The challenged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 90 (1993). The cases in which this standard was satisfied involved "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman*, 164 F.3d 820, 828–29 (2d Cir.1999).

▮ The defendants' conduct with respect to the extension of health insurance and their denial that they asked Mr. Wooten to stay after the attack on Tower One clearly do not qualify as "extreme and outrageous conduct." The plaintiff argues that while these acts would not normally be considered extreme or outrageous, they should be regarded as such in the context of the devastation of September 11 and the plaintiff's situation as a woman who was nine months pregnant and who gave birth to a child who subsequently was hospitalized several times. However, the plaintiff does not allege that the defendants knew she was pregnant or had a child with serious health problems. Nor is it extreme and outrageous for the defendants to change their policies regarding extension of health insurance or to deny the basis of potential liability even if they knew about these circumstances, unless the plaintiff alleges it was done deliberately to harass her, and she has not done so or alleged that she would have any basis to do so.

▮ Plaintiff's other example—alleging that defendants told plaintiff that her husband was alive and displaying his name on their website as a survivor, when he was, in fact, tragically trapped and killed in the tower—also does not rise to the level of being extreme and outrageous. Plaintiff does not allege any evil intent on defendants' part, or any absence of good faith. Defendants' erroneous belief, in the confusion that prevailed following the September 11 terrorist attack, is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Murphy*, 461 N.Y.S.2d 232, 448 N.E.2d at 90. Also, to the extent that plaintiff is alleging that defendants intentionally inflicted emotional distress on her by ordering her husband to stay, that claim must be dismissed. In *Hickey v. Nat'l League of Prof'l Baseball Clubs*, 169 A.D.2d 685, 565 N.Y.S.2d 65 (N.Y.App.Div. 1991), the court dismissed an intentional infliction of emotional distress claim by a

plaintiff whose baseball player fiancé had died while speaking on the phone to her, allegedly due to the grueling schedule imposed by the defendants. The court held that "the complaint cannot be read to allege that the imposition of a difficult work schedule was done to her, or that it was done with the intention of causing her emotional harm, and because it cannot be said that such conduct exceeds all reasonable bounds of decency." *Id.* at 66.

Accordingly, I hold that Count Four, seeking recovery based on intentional infliction of emotional distress, must be dismissed. No issue of material fact can be raised from either the existing amended complaint or the proposed second amended complaint.

### C. Plaintiff's Motion to Amend Complaint

■ An amendment to a pleading is futile and should be denied if the proposed pleading could not withstand a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir.2002). Having construed the proposed second amended complaint in the light most favorable to the plaintiff and accepting all its allegations as true, the proposed amended complaint fails to state a claim upon which relief can be granted against Fiduciary Trust and Franklin Templeton. Accordingly, plaintiff's motion to amend its claims against these two defendants is denied.

Plaintiff's proposed second amended complaint also changes its allegations with respect to the two other defendants, Huntleigh USA and United Air Lines, who have not objected to the proposed amendments. Accordingly, I grant the plaintiff permission to amend her complaint as to these two defendants.

### III. Conclusion

For the reasons stated, I grant the motion by defendants Fiduciary Trust Company International and Franklin Templeton Investments to dismiss all claims against them.

Plaintiff's action shall continue against defendants Huntleigh USA Corporation and United Air Lines. Plaintiff shall file an amended complaint, deleting Fiduciary Trust Company International and Franklin Templeton Investments as defendants, by May 27, 2003.

SO ORDERED.